[No. B184547. Second Dist., Div. Three. Sept. 28, 2006.]

ROBERT ZAVALA, Plaintiff and Respondent, v.
SCOTT BROTHERS DAIRY, INC., Defendant and Appellant.

COUNSEL

Marc D. Roberts & Associates, Marc D. Roberts and James M. Gilbert for Defendant and Appellant.

Kesluk & Silverstein, Douglas N. Silverstein and Alexandra M. Steinberg for Plaintiff and Respondent.

OPINION

ALDRICH, J.—

## INTRODUCTION

Plaintiffs Robert Zavala and a class of employees sued their employer, defendant Scott Brothers Dairy, Inc. (the Dairy). Plaintiffs asserted an unfair business practices cause of action and two wage claims under provisions of the Labor Code and wage orders issued by the Industrial Welfare Commission (IWC) that concerned itemized wage statements and rest periods. The

trial court denied the Dairy's petition to compel arbitration (Code Civ. Proc., § 1294, subd. (a)) and the Dairy appeals. We conclude that the trial court did not err, and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Zavala, a former employee of the Dairy, filed this class action lawsuit. The lawsuit alleged that the Dairy failed to provide him and other similarly situated employees with statutory rest breaks and properly itemized wage statements, in violation of Labor Code sections 226 and 226.7 and IWC wage orders. Plaintiffs alleged that the Dairy had a consistent policy of failing to provide hourly employees with rest periods of at least 10 minutes per four hours worked, and failing to pay employees one hour of pay for each workday that rest periods were not provided. The complaint sought waiting-time penalties under Labor Code section 203, and, alleging that the Dairy's conduct was an unfair business practice in violation of Business and Professions Code section 17200, sought injunctive relief, restitution, and disgorgement.

The Dairy moved to compel arbitration. It observed that its employees, including plaintiffs, were represented by the Chino Valley Products Dairy and Teamsters Local Number 63 (the Union), which operated under a collective bargaining agreement (CBA). The CBA defined grievances as "all disputes or controversies *arising under* this Agreement . . . ."[1] and set out a grievance procedure that culminated in final and binding arbitration. (Italics added.) Articles 11.02 and 41.01 provided for wage stub itemization and coffee breaks in similar, but not identical, language to the Labor Code and IWC wage orders.[2] The Dairy argued that plaintiffs' allegations arose under

---

[1] Article 30 of the CBA, entitled "Grievance Procedure" stated: "In regard to all disputes or controversies arising under this Agreement, an attempt shall first be made to settle the matter amicably by conference between representatives of the Union and the Employer."

The arbitration procedure is found in article 31, which reads in relevant part: "Failing settlement under Article 30 above, either party to the Agreement may request that the matter be submitted to arbitration by tendering written notice to the other party . . . . [¶] . . . [¶] . . . The decision arrived at pursuant to this procedure shall be final and binding upon all parties and persons thereto."

[2] Article 11.02 of the CBA concerning pay reads: "The pay stub advice accompanying employee's pay shall show, separate from the regular pay, overtime, days off worked, holiday pay, social security, disability insurance, withholding tax and any other deductions agreed upon between the Employer and employees."

Article 41.01 of the CBA entitled "Coffee Breaks" states: "All employees shall be allowed at least two (2) ten (10) minute coffee breaks, one in the first part of the shift and one in the last part of the shift."

the CBA and hence, were subject to arbitration. As the arbitration language was broad and explicit, the Dairy argued, it required arbitration of plaintiffs' claims.

Through the declaration of its president in support of its motion, the Dairy explained that the Union had already grieved the very same rest period issue on behalf of all of its members, including plaintiffs, in January 2005. Attached to the motion was a copy of the Union's prior grievance. In March 2005, the Union wrote to the Dairy to confirm that the parties had resolved the January grievance and that the matter was closed.

The trial court denied the Dairy's motion to compel arbitration ruling that the claims did not arise out of the CBA. The Dairy filed its timely appeal contending that the trial court erred in denying its motion to compel arbitration.[3]

## DISCUSSION

### 1. *The standard of review.*

"An order denying a petition to compel contractual arbitration is appealable." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349 [79 Cal.Rptr.2d 308, 965 P.2d 1178], citing Code Civ. Proc., § 1294, subd. (a).)

■ Under Code of Civil Procedure section 1281.2, unless the petitioner has waived arbitration, grounds exist for revocation of the agreement, or a party to the arbitration agreement is also a party to a pending matter with a third party creating the possibility of conflicting rulings, the trial court "shall order" the parties to arbitrate the controversy " 'if it determines that an agreement to arbitrate the controversy exists.' " (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673, 684 [132 Cal.Rptr.2d 207].)

Generally, " ' "[w]hether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was

---

[3] The Dairy also argued in support of its motion before the trial court that section 301 of the federal Labor Management Relations Act, 1947 (29 U.S.C. § 185(a) (LMRA)), preempts state law claims that are based directly on, or are substantially dependent on, an interpretation of a collective bargaining agreement. The Dairy does not press its preemption argument on appeal and so we do not address it.

introduced in the trial court." [¶] . . . Where the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence. [Citation.]' [Citation.]" (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority, supra,* 107 Cal.App.4th at p. 685.) Although " ' "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration[]" ' " (*id.* at p. 684), there exists no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)

### 2. *The statutory background.*

#### a. *Rest breaks.*

Labor Code section 226.7, subdivision (a) reads: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

California Code of Regulations, title 8, section 11070, subdivision (12)(A) reads, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Cal. Code Regs., tit. 8, § 11070, subd. (12)(A); see Lab. Code, § 226.7, subd. (a).)

"If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided." (Cal. Code Regs., tit. 8, § 11070, subd. (12)(B); see Lab. Code, § 226.7, subd. (b).[4])

---

[4] Labor Code section 226.7, subdivision (b) states: "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

■ According to an opinion letter from the Department of Industrial Relations Division of Labor Standards Enforcement (DLSE), " 'The requirement that every employee have a <u>net</u> 10-minute rest period every four hours or major fraction thereof is a *state-mandated minimum labor standard.*' " (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 954 [35 Cal.Rptr.3d 243], quoting Dept. of Industrial Relations, DLSE, Opn. Letter 1995.06.02, p. 2, original underscoring & italics, fn. omitted.)[5]

### b. *Itemized wage-statements.*

■ Labor Code section 226, subdivision (a), specifies the form and content of paycheck stubs. The statute directs employers to furnish each employee, at the time wages are paid, a separable statement containing an accurate, dated, itemized account, in indelible writing showing, among other things, the gross and net wages earned, the total hours the employee worked, all deductions, the dates of the pay period, the employee's name and identification number, the employer's name and address, and all applicable hourly rates in effect during the pay period.[6]

An employer who knowingly and intentionally violates Labor Code section 226 is guilty of a misdemeanor and is subject to monetary penalties or imprisonment. (Lab. Code, §§ 226, subd. (e), 226.6.)

According to an opinion letter from the DLSE " '[T]he obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked.' (Dept. of Industrial Relations,

---

[5] As noted in *Cicairos*, generally, " 'courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area.' [Citation.]" (*Cicairos v. Summit Logistics, Inc., supra*, 133 Cal.App.4th at p. 958.)

[6] Labor Code section 226, subdivision (a), reads, "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) [the name of the employee], (8) [the name and address of the employer], and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

DLSE, Opn. Letter 2002.05.17, p. 3.) '*The failure to list* the precise number of hours worked during the pay period conflicts with the express language of the statute and *stands in the way of the statutory purpose.*' (*Ibid.*) 'If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the total hours worked during the pay period, the requirements of section 226 would not be met.' (*Id.* at p. 6 . . . .)" (*Cicairos v. Summit Logistics, Inc., supra*, 133 Cal.App.4th at p. 955, italics added, original italics omitted.)

Most important, the Legislature has declared in Labor Code section 219, subdivision (a) that "*no provision of this article* [including sections 226 and 226.7] *can in any way be contravened or set aside by a private agreement, whether written, oral, or implied.*" (Italics added.)

### 3. *The CBA does not prohibit resolution of plaintiffs' claims in a judicial forum*

The Dairy contends that by virtue of their representation by the Union, which signed the CBA, plaintiffs agreed to arbitrate statutory claims related to rest periods, itemized statements, waiting time penalties, and unfair business practices under the CBA. It argues that the CBA contains a clear and broad, final and binding arbitration clause covering all grievances under the CBA, with the result that any disputes concerning plaintiffs' employment were disputes that arose under the CBA. The Union clearly recognized this when it submitted the rest period grievance in January 2005, the Dairy asserts.

The question before us is whether the parties agreed to resolve statutory labor claims by arbitration. We conclude that regardless of whether the CBA includes a broad arbitration provision, that clause is not binding on plaintiffs because the Union could not waive plaintiffs' right to bring statutory labor rights claims in court and because such claims did not arise under the CBA.

On similar facts, the United States Supreme Court held that employees could bring their statutory wage claims under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq., the FLSA) in federal court, notwithstanding their prior submission of the same claims to mandatory grievance procedures pursuant to their collective bargaining agreement. (*Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728, 745 [67 L.Ed.2d 641,

101 S.Ct. 1437].) Employee truck drivers in *Barrentine* were not compensated for the time spent complying with federal regulations requiring they conduct safety inspections of their trucks (*id.* at p. 730), even though the governing collective bargaining agreement provided that " 'All employees covered by this Agreement shall be paid for all time spent in the service of the Employer.' " (*Id.* at p. 731, fn. 3.) The collective-bargaining agreement contained a final and binding resolution procedure that broadly applied to " '*any controversy which might arise.*' " (*Id.* at p. 731 & fn. 5, italics added.) The employees filed a grievance based on these underlying facts. After the grievance was rejected, the plaintiffs filed a lawsuit in federal court alleging violation of the FLSA. (450 U.S. at pp. 730–731.)

The *Barrentine* court acknowledged the national policy favoring collective bargaining and the usual deference "to collectively bargained dispute-resolution procedures when the parties' dispute arises out of the collective-bargaining process." (*Barrentine v. Arkansas-Best Freight System, supra,* 450 U.S. at pp. 735–736.) However, *Barrentine* determined that "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on *rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.*" (*Id.* at p. 737, italics added.) Rights under the FLSA, *Barrentine* concluded, cannot be abridged by contract or otherwise waived. (450 U.S. at p. 740.) Those rights "are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization." (*Id.* at p. 745.) Thus, "Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and . . . these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum . . . ." (*Ibid.*)[7]

The Ninth Circuit has held that California's statutorily guaranteed meal periods are not subject to waiver by a collective bargaining agreement. (*Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1082.) Meal periods are "designed to protect individual employees," "address some of 'the most basic demands of an employee's health and welfare' [citation]," and Labor Code section 219, subdivision (a) makes them "plainly nonnegotiable." (*Valles v. Ivy Hill Corp., supra,* at pp. 1081, 1082.) That is, such rights are

---

[7] Another consideration in *Barrentine*, namely, that arbitrators might generally not be suited to resolving federal statutory claims (*Barrentine v. Arkansas-Best Freight System, supra,* 450 U.S. at p. 743), was later rejected in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 34, footnote 5 [114 L.Ed.2d 26, 111 S.Ct. 1647]. Nonetheless, *Gilmer* "confirmed the continuing vitality of the *Barrentine* . . . line of cases." (*Albertson's, Inc. v. United Food* (9th Cir. 1998) 157 F.3d 758, 761.) In any event, *Gilmer* is distinguished as it involved an arbitration clause in an individual's employment contract not in a union's collective-bargaining agreement. (*Gilmer, supra,* at p. 23.)

both nonnegotiable in collective bargaining and nonwaivable by the collective bargaining agreement. (*Id.* at p. 1082.)

Comparable reasoning was utilized in California in *Cicairos v. Summit Logistics, Inc., supra,* 133 Cal.App.4th 949, with respect to the same statutory protections for rest breaks and itemized wage statements at issue here. The five plaintiffs in *Cicairos* were members of the Teamsters Union Local 439 and were parties to a collective bargaining agreement that provided for rest breaks and meal periods. (*Id.* at p. 955.) The collective bargaining agreement stated " 'A grievance is any controversy . . . arising out of an alleged violation of a specific provision of this Agreement. . . . The grievance and arbitration procedure of this Agreement will be the sole and exclusive means available for resolving grievances.' " (*Ibid.*) Rather than to file a grievance, the plaintiffs sued the employer in state court alleging the violation of statutory labor standards. The employer contended that the plaintiffs were trying to enforce rights given them in the collective bargaining agreement with the result that the court should dismiss the claims for lack of jurisdiction. (*Id.* at p. 959.)

The *Cicairos* court first reviewed the wage orders concerning rest breaks and itemized wage statements, and determined that the rest break requirement was a " '*state-mandated minimum labor standard*' " and nonwaivable. (*Cicairos v. Summit Logistics, Inc., supra,* 133 Cal.App.4th at p. 954.) *Cicairos* then held that the plaintiffs were not required to take their rest break claims to arbitration because the collective-bargaining agreement did "not contain a provision whereby the plaintiffs agreed to arbitrate alleged violations of statutory rights." (*Id.* at pp. 959–960.) The court noted, "[a]lthough statutory rights violations allegations can be resolved by arbitration, the parties in this case did not agree to do so." (*Id.* at p. 960.) *Cicairos* held that arbitration was "not required simply because the provisions relating to meal periods and rest breaks in the collective bargaining agreement are almost identical or even more generous than under state law. Since minimum statutory labor standards are at issue here, the parties could not waive the required meal periods or rest breaks." (*Ibid.*; cf. *Veguez v. Governing Bd. of the Long Beach Unified School Dist.* (2005) 127 Cal.App.4th 406, 417, fn. 8 [25 Cal.Rptr.3d 526].)

■ Following *Barrentine, Valles,* and *Cicairos,* we hold that the trial court correctly denied the Dairy's motion to compel arbitration first because the Union could not waive plaintiffs' statutory right to rest breaks and wage stub itemization and so plaintiffs may protect those rights in a judicial forum. As demonstrated above, rest breaks are a " 'state-mandated minimum labor standard' " (*Cicairos v. Summit Logistics, Inc., supra,* 133 Cal.App.4th at p. 954, italics omitted, quoting Dept. of Industrial Relations, DLSE, Opn.

Letter 1995.06.02, p. 2), and by enacting Labor Code section 219, subdivision (a), the Legislature made both rest breaks and wage stub itemization requirements specifically nonwaivable and nonabridgeable by contract. Furthermore, the Dairy points to no provision under which plaintiffs *agreed to arbitrate violations of statutory rights.* (133 Cal.App.4th at pp. 959–960.) While the parties could resolve the statutory rights violations through arbitration (*id.* at p. 960), there is no provision in the CBA here where plaintiffs agreed to do so. (*Ibid.*) Mere recital of the statutory rest break and wage statement requirements in the CBA does not render arbitration of alleged violations of those statutory rights. (*Ibid.*) Therefore, plaintiffs did not agree to arbitrate their statutory labor claims and the Union could not waive these rights guaranteed to them as individual employees.

The Dairy argues that any disputes concerning plaintiffs' employment were disputes that "arose under" the CBA. Toward that end, the Dairy cites the broad arbitration provision in the CBA that covers "all disputes or controversies *arising under* this Agreement . . . ." (Italics added.) But, these rights devolve on plaintiffs as individual employees, not as members of a collective organization and so they exist independent of the collective bargaining process. (*Barrentine v. Arkansas-Best Freight System, supra,* 450 U.S. at p. 745.) Thus, this lawsuit represents an effort to enforce nonwaivable statutory rights, not an attempt to enforce compliance with the CBA. (*Tracy Educators Assn. v. Superior Court* (2002) 96 Cal.App.4th 530, 538 [116 Cal.Rptr.2d 916] [where the lawsuit was " 'not an attempt to enforce compliance with the collective bargaining agreement but with the controlling statute[, the plaintiff] was not required to exhaust administrative remedies [of arbitration] before seeking equitable relief in the trial court' "].) Certainly, plaintiffs' injunctive relief claim under the unfair business practices act (Bus. & Prof. Code, § 17200) is not arbitrable. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 316 [133 Cal.Rptr.2d 58, 66 P.3d 1157].)[8] In sum, plaintiffs did not agree to arbitrate their claims and their dispute does not *arise under* the CBA. Plaintiffs are not required to arbitrate this dispute.

Second, we hold that plaintiffs are not precluded from bringing their statutory claims to state court by the fact that the Union had already grieved the rest break issue under the CBA in January 2005, the Dairy's contention to the contrary notwithstanding. We observe that the itemized wage statement claim has not been grieved and for that reason would not be barred. Moreover, courts have repeatedly held that the prior submission of certain statutory claims to final and binding arbitration does not bar a subsequent

---

[8] Plaintiffs' restitution and disgorgement claims may be made arbitrable under the reasoning of *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th at pages 317 to 318.

lawsuit where the employees have not waived their statutorily protected rights to a judicial resolution. (*Barrentine v. Arkansas-Best Freight System, supra*, 450 U.S. at p. 740 [statutory wage claim]; *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36, 52 [39 L.Ed.2d 147, 94 S.Ct. 1011] [statutory discrimination claim]; see also *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 78–80 [142 L.Ed.2d 361, 119 S.Ct. 391] [statutory discrimination claim]; *Camargo v. California Portland Cement Co.* (2001) 86 Cal.App.4th 995, 1018 [103 Cal. Rptr. 2d 841] [statutory discrimination and harassment claims]; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 46–49 [90 Cal.Rptr.2d 15] [statutory discrimination claim].) These cases are predicated on the rationale that the rights of individual employees to a workplace free of discrimination or to minimum wage protections are sufficiently important that they stand independent of collective bargaining and are intended to be judicially enforced. (*Barrentine, supra*, at pp. 740, 745; *Alexander, supra*, at pp. 51, 56;[9] cf. *Veguez v. Governing Bd. of the Long Beach Unified School Dist., supra*, 127 Cal.App.4th at p. 417, fn. 8 ["Even if the collective bargaining agreement were identical to the statutory provisions . . . we are not convinced [the employee] would be required to exhaust internal grievance procedures before filing a lawsuit to enforce her statutory rights."].)

This same rationale applies in the context of California's laws protecting rest periods and wage stub itemization. When enacting these minimum labor standards, the Legislature granted to individual employees the right to vindicate them in court, separate from the enforcement tools it gave to the Labor Commissioner. (Lab. Code, § 218; see also, Lab. Code, §§ 217 & 218.5–218.6.) These are "minimum substantive guarantees" (*Barrentine v. Arkansas-Best Freight System, supra*, 450 U.S. at p. 737), because the Legislature has categorically forbidden the modification of any provision of these laws. (Lab. Code, § 219, subd. (a).)

Consequently, the rights plaintiffs seek to assert in this civil action stand independent of the collective bargaining process. Although certainly plaintiffs could have and did grieve their rest break claim under the CBA, as the Dairy observes, where nonnegotiable, nonwaivable, minimum statutory labor standards are at issue, plaintiffs are not precluded from now vindicating all of these individual rights in court. (*Barrentine v. Arkansas-Best Freight System, supra*, 450 U.S. at p. 745.)

---

[9] While we need not analyze the issue here, we note that in the context of employment discrimination at least, Unions may waive their member-employees' rights to seek resolution of those claims in a judicial forum if such waiver is clearly and unmistakably stated in the collective bargaining agreement. (*Wright v. Universal Maritime Service Corp., supra*, 525 U.S. at p. 80; *Camargo v. California Portland Cement Co., supra*, 86 Cal.App.4th at p. 1018.)

## DISPOSITION

The order is affirmed.

Croskey, Acting P. J., and Kitching, J., concurred.