KIM, J.**
*818 *1265 I. INTRODUCTION
Plaintiffs Fabio Canales and Andy Cortes, on behalf of themselves and class members, appeal from a summary judgment. Plaintiffs were former or current non-exempt employees of defendant Wells Fargo Bank, N.A. Plaintiffs alleged that their wage statements failed to include information required under Labor Code 1 section 226, subdivision (a)(9). Specifically, plaintiffs argued that a line on the wage statement, "OverTimePay-Override," should, but did not, include hourly rates and hours worked. Plaintiffs also alleged defendant violated section 226 by failing to provide a wage statement concurrently with the terminated employees' final wages paid in-store. Plaintiffs moved for summary adjudication on the section 226 cause of action.
Defendant in its summary judgment motion argued that OverTimePay-Override reflected additional overtime pay that was owed for work performed on a previous pay period, but could not be calculated because it was based on a nondiscretionary bonus not yet earned. Under subdivision (a)(9), defendant contended OverTimePay-Override did not have corresponding hourly rates or hours worked for the current pay period. As to plaintiffs' second theory, defendant asserted it complied with the statute by furnishing the wage statement by mail. The trial court found in favor of defendant and against plaintiffs.
Plaintiffs contend the trial court erred by denying their summary adjudication motion and by granting defendant's motion. We affirm.
II. BACKGROUND
A. Factual Background[2]
Plaintiffs are current or former non-exempt California employees of defendant. Defendant would in some instances issue a paycheck and wage statement *1266 that contained nondiscretionary incentive compensation[3] (the bonus) to employees who worked during the period covered by the incentive compensation. These bonus periods would be monthly, quarterly, or annually. For employees who worked overtime during those bonus periods, the wage statements contained a line item called "OverTimePay-Override," formerly called "OT-Flat." OverTimePay-Override listed incremental additional overtime paid to the employee for overtime hours worked during the bonus period under the "Earnings" column.[4] For the OverTimePay-Override *819 line on the wage statements, no hourly rates or hours worked was identified.
In certain situations, defendant issued final wages to employees at the time of their termination through "in-store payments" made by cashier's check. Defendant's payroll department would then create the wage statement either the same day or the next day and mail it to the terminated employee by United States mail.[5] During their employment, employees had online access to their itemized wage statements. Employees lost such online access the day after termination.
B. First Amended Complaint
Plaintiffs filed their first amended complaint, the operative pleading, on June 20, 2013. Plaintiffs sued on behalf of themselves and a class composed of (1) current or former non-exempt California employees of defendant who received OverTimePay-Override from March 13, 2012 to present and (2) all former California employees of defendant who were terminated from March 13, 2012 to present and were paid their final wages through the "in-store payment" procedure. In their first cause of action, plaintiffs alleged defendant *1267 violated section 226[6] by failing to identify the hourly rates and the hours worked that corresponded to OverTimePay-Override. Plaintiffs also alleged defendant violated section 226 by failing to provide terminated employees with wage statements immediately upon termination. Plaintiffs alleged a second cause of action pursuant to the Private Attorneys General Act (§ 2698 et seq.) (PAGA) for violation of section 226.[7]
C. Summary Adjudication/Judgment Motions
On December 15, 2015, plaintiffs moved for summary adjudication.[8] Much like the *820 allegations in their amended complaint, plaintiffs argued that defendant violated section 226, subdivision (a)(9) by failing to specify the hourly rates and number of hours worked for the OverTimePay-Override adjustment on the itemized wage statements. Plaintiffs also argued defendant violated section 226 by failing to provide to terminated employees an itemized wage statement concurrently with their final wages that were paid in-store by cashier's check.
Defendant filed its own summary judgment motion on December 15, 2015. Defendant asserted it did not violate section 226, subdivision (a)(9) because OverTimePay-Override represented an increase in overtime pay, based on a periodic bonus, for overtime hours worked in previous pay periods. Defendant argued there were no "applicable hourly rates in effect during the pay period " that corresponded to OverTimePay-Override and thus defendant did not have to provide such information on the wage statement. As to plaintiffs' second theory, defendant contended it furnished the itemized statement as *1268 required under section 226 by mailing it to the terminated employee's last known address either the same day or the next day. Finally, defendant argued plaintiffs' PAGA cause of action failed because it was wholly derivative of a violation based on section 226 and because plaintiffs failed to exhaust administrative remedies. Plaintiffs do not dispute their PAGA cause of action is derivative of the section 226 claims.
On May 26, 2016, the trial court issued its order granting defendant's motion and denying that of plaintiffs. As to defendant's first argument, the trial court agreed that section 226, subdivision (a)(9) did not apply to OverTimePay-Override because there was no applicable hourly rate for the pay period reflected in the wage statement. For defendant's second argument, the trial court found that defendant complied with the "furnish" requirement under section 226 by mailing the wage statement.
III. DISCUSSION
A. Standard of Review
"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.... [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.... A prima facie showing is one that is sufficient to support the position of the party in question. [Fns. omitted.]" ( Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850-851, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
We review an order granting summary judgment de novo. ( Coral Construction, Inc. v. City and County of San Francisco (2010) 50 Cal.4th 315, 336, 113 Cal.Rptr.3d 279, 235 P.3d 947.) The trial court's stated reasons for granting summary judgment are not binding because we review its ruling not its rationale. ( Ibid . ) In addition, a summary judgment *821 motion is directed to the issues framed by the pleadings. ( Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252, 32 Cal.Rptr.2d 223, 876 P.2d 1022.) These are the only *1269 issues a motion for summary judgment must address. ( Conroy v. Regents of University of California (2009) 45 Cal.4th 1244, 1250, 91 Cal.Rptr.3d 532, 203 P.3d 1127.)
This appeal solely involves statutory interpretation. "The proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is ... subject to de novo review." ( Morgan v. United Retail Inc. (2010) 186 Cal.App.4th 1136, 1142, 113 Cal.Rptr.3d 10 ( Morgan ).) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." ( Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC (2011) 52 Cal.4th 1100, 1106-1107, 133 Cal.Rptr.3d 738, 264 P.3d 579 ; Morgan, supra , 186 Cal.App.4th at pp. 1142-1143, 113 Cal.Rptr.3d 10.)
B.-C.***
D. No Violation for not Providing an Itemized Statement at Time of Termination
Defendant argues it is in compliance with section 226, subdivision (a) because it "furnished" the wage statement to the discharged employee by United States mail. As noted, section 226, subdivision (a) provided, "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing...." It is undisputed defendant provided some discharged employees with their last wages in-store by cashier's check, in compliance with the *1270 Labor Code. (See §§ 201, subd. (a) ["[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately"], 208 ["[e]very employee who is discharged shall be paid at the place of discharge"].) "Furnish" means to "provide with what is needed," or to "supply" or "give." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 474, col. 1.) Section 226 provides that an employer must furnish the wage statement as either "a detachable part of the check, draft, or voucher paying the employee's wages," or separately when the wages are paid by personal check or cash. Other than that one provision, section 226 describes no other specific means by which an employer is to furnish the itemized statement to an employee. Thus, mailing the wage statement is a viable means to "furnish." Defendant *822 could also furnish the wage statement separately because paying discharged employees by cashier's check was the equivalent of paying them by cash.[11] However, the Legislature also provided for when an employer was to furnish the wage statement to the employee: "semimonthly or at the time of each payment of wages."
We first find that for purposes of the Labor Code, "at the time of each payment of wages" for discharged employees means "immediately." As noted, a discharged employee's unpaid earned wages are due and payable "immediately." (§ 201, subd. (a).) When construing section 226 in relation to the Labor Code, the most logical construction of "at the time of each payment of wages" in section 226 for discharged employees is whenever the discharged employee receives his or her unpaid earned wages, which is "immediately." Because defendant in some instances did not provide wage statements immediately to discharged employees, but rather mailed the statement to the employee's last known address the same day or the next day, defendant did not furnish the wage statement to these discharged employees "at the time of each payment of wages."
However, by the plain meaning of the statute, defendant also had the option of furnishing the wage statement semimonthly. ( § 226, subd. (a).) Additionally, nothing in section 226 suggests that an employer cannot furnish the wage statement prior to the semimonthly date. For example, suppose an employer furnishes wage statements on the first and the fifteenth of each month.
*1271 The employer discharges an employee on the second of the month. Per the statute's plain language, if an employer pays the final wages by personal check or cash, it has the option of furnishing the discharged employee with the wage statement on the fifteenth. We find it illogical to conclude an employer violates section 226 by furnishing a wage statement before the semimonthly date has been reached. If the employer furnishes the wage statement to the discharged employee on the fifth of the month, the employer has complied with the requirement that it furnish the wage statement to the employee "semimonthly" because the employee would have ostensibly been furnished with the wage statement by the semimonthly date.
For purposes of section 226, if an employer furnishes an employee's wage statement before or by the semimonthly deadline, the employer is in compliance. Thus, we interpret "semimonthly or at the time of each payment of wages" as representing the outermost deadlines by which an employer is required to furnish the wage statement. Since defendant mailed the wage statement to certain discharged employees paid in-store by the same day as or the next day after termination, defendant was in compliance with section 226 because the employee was "furnished" with the wage statement semimonthly. Defendant has met its initial burden of production. ( Code Civ. Proc., § 437c, subd. (p)(2).)
*823 Plaintiffs contend the wage statement must be furnished immediately for a discharged employee. Plaintiffs cite the DLSE Policies and Interpretations Manual (DLSE Manual), section 14.1.1, which provides, "[a] California employer must furnish a statement showing the following information to each employee at the time of payment of wages (or at least semimonthly, whichever occurs first)," and section 14.1.2, which provides, "[s]ection 226 ... sets out the employer's responsibilities in connection with the wage statement which must accompany the check or cash payment to the employee."
Plaintiffs have not met their burden. ( Code Civ. Proc., § 437c, subd. (p)(2).) There is no evidence in the record that the DLSE adopted this interpretation in accordance with the Administrative Procedure Act ( Gov. Code, § 11340 et seq. ). Thus, it is the equivalent of a void underground regulation. ( Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 576-577, 59 Cal.Rptr.2d 186, 927 P.2d 296.) As our Supreme Court held, "when an agency like the DLSE sets forth an interpretive policy in a void underground regulation, the deference that the agency's interpretation would normally enjoy is absent, but in its place the agency has its power to persuade." ( Alvarado, supra , 4 Cal.5th 542, 559, 229 Cal.Rptr.3d 347, 411 P.3d 528.)
The DLSE's interpretation is not persuasive. The term "whichever occurs first" is not in section 226. The plain meaning of the statute indicates *1272 the Legislature specifically intended a choice for employers as to when to furnish the wage statement. There is also no requirement in section 226 that the wage statement "must accompany" the personal check or cash payment to the employee. As noted, the wage statement must be a detachable part of the check, draft, or voucher, unless payment is by personal check or cash; in such instance the wage statement may be furnished separately. ( § 226, subd. (a).) Accordingly, we decline to follow the DLSE's interpretation.
Plaintiffs cite several cases that purportedly determined that section 226, subdivision (a) requires employers to furnish a wage statement to each employee "at the time wages are paid." (See Zavala v. Scott Brothers Dairy, Inc. (2006) 143 Cal.App.4th 585, 591, 49 Cal.Rptr.3d 503 ( Zavala ); Reinhardt v. Gemini Motor Transport (E.D.Cal. 2012) 879 F.Supp.2d 1138, 1141 ( Reinhardt ); In re Bimbo Bakeries USA FLSA Actions (N.D.Cal. Oct. 24, 2008, No. C 05-00829 JW) 2008 WL 10850153, at *7, 2008 U.S. Dist. Lexis 125068, at *23 ( Bimbo Bakeries ).) Such statements were dicta as the cases concerned issues unrelated to the one here. ( Zavala, supra , 143 Cal.App.4th at pp. 592-593, 49 Cal.Rptr.3d 503 [whether collective bargaining agreement required arbitration of Labor Code claims]; Reinhardt, supra , 879 F.Supp.2d at pp. 1141-1142 [whether plaintiffs sufficiently alleged Labor Code violations were " 'knowing and intentional' " for recovery under § 226, subd. (e) ]; Bimbo Bakeries , supra , 2008 WL 10850153, at *7, 2008 U.S. Dist. Lexis 125068, at *24 [whether defendant's violation was "knowing and intentional" for summary judgment purposes].) They are thus unpersuasive.
Defendant should prevail on this theory. Because there are no triable issues of material fact and defendant is entitled to judgment as a matter of law, summary judgment was properly granted in its favor.
IV. DISPOSITION
The judgment is affirmed. Defendant Wells Fargo Bank, N.A. is entitled to recover its costs on appeal from plaintiffs Fabio Canales and Andy Cortes.
We concur:
KRIEGLER, Acting P.J.
BAKER, J.

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

All facts are considered undisputed for purposes of summary judgment.

Teresa Swanson, defendant's person most knowledgeable, stated that a nondiscretionary bonus was "given to a team member, based on some sort of preset work definition, goal, something that they have to meet. And then they earn that bonus." It appears this bonus was a production or piecework bonus.

To calculate the amount to be entered on the OverTimePay-Override line: (1) take the bonus earned during the bonus period, whether it be by year, quarter, or month; (2) divide the bonus by the total number of hours worked during the bonus period; (3) multiply the resulting number by 0.5; (4) multiply the resulting number by the total number of overtime hours worked during the bonus period.
Our Supreme Court in a recent decision concerning flat sum bonuses under California law decided that the proper method for calculating the rate of overtime pay when an employee receives both an hourly wage and a flat sum bonus is to divide the bonus by the number of nonovertime hours actually worked during the bonus period. (Alvarado v. Dart Container Corp. of California (2018) 4 Cal.5th 542, 562, 229 Cal.Rptr.3d 347, 411 P.3d 528 (Alvarado ).) The Supreme Court specifically excluded production or piecework bonuses or a commission from its holding. (Id. at p. 561, fn. 6, 229 Cal.Rptr.3d 347, 411 P.3d 528.)

Plaintiffs asserted in their opening brief, without citation to the record, that they never received their wage statements. We will disregard such assertions as meritless. (Susag v. City of Lake Forest (2002) 94 Cal.App.4th 1401, 1416, 115 Cal.Rptr.2d 269.)

At the time of the alleged offenses, section 226, subdivision (a)(9) provided in pertinent part: "(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing ... (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee...." (Stats. 2012, ch. 844, § 1.7.) Subdivision (a)(9) was added by the Legislature in 2000. (Stats. 2000, ch. 876, § 6.)
Section 226, subdivision (a) was amended by the Legislature in 2016 to read in pertinent part: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing...." (Stats. 2016, ch. 77, § 1, eff. Jan 1, 2017.) Subdivision (a)(2) was also amended, and subdivision (j) was added. (Ibid .) The 2016 amendment does not substantively affect our opinion.

A third plaintiff, Luciano Gonzales, was initially part of this action. However, Gonzales was not named as a class representative in plaintiffs' motion for class certification and is not an appellant. The class was certified on March 20, 2015.

Though plaintiffs categorized their motion as one for summary judgment or in the alternative, summary adjudication, plaintiffs sought only summary adjudication as to their first cause of action for violation of section 226.

See footnote *, ante .

As argued by defendant, a cashier's check was the equivalent of paying by cash. (See Gray1 CPB, LLC v. SCC Acquisitions, Inc. (2015) 233 Cal.App.4th 882, 893-894, 896, 182 Cal.Rptr.3d 654 [citing U. Com. Code, § 3310, cashier's check taken for obligation has same effect as cash].) Plaintiffs argue for the first time in their reply brief that a cashier's check is not the equivalent of a personal check or cash for purposes of section 226. This issue was not raised in the opening brief nor before the trial court and is therefore waived and forfeited. (Tellez v. Rich Voss Trucking, Inc. (2015) 240 Cal.App.4th 1052, 1066, 193 Cal.Rptr.3d 403 ; SCI California Funeral Services, Inc. v. Five Bridges Foundation (2012) 203 Cal.App.4th 549, 573, fn. 18, 137 Cal.Rptr.3d 693 ; Greenwich S.F., LLC v. Wong (2010) 190 Cal.App.4th 739, 767, 118 Cal.Rptr.3d 531.)