Yadir A. ONTIVEROS, Plaintiff, as an individual, and on behalf of all others similarly situated,

v.

SAFELITE FULFILLMENT, INC., et al., Defendants.

Case No.: CV 15–7118 DMG (RAOx)

United States District Court, C.D. California.

Signed 02/07/2017

Sean M. Blakely, Fletcher W. H. Schmidt, Paul Keith Haines, Haines Law Group APC, El Segundo, CA, for Plaintiff,

as an individual, and on behalf of all others similarly situated.

Brent Mathew Giddens, Daphne Pierre Bishop, Carothers DiSante and Freudenberger LLP, Los Angeles, CA, Robert A. Harris, Vorys Sater Seymour and Pease LLP, Columbus, OH, for Defendants.

## ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [37] AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[39]

DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

Pending before the Court are Defendant Safelite Fulfillment, Inc.'s ("Safelite") motion for summary judgment [Doc. # 37] and Plaintiff's motion for partial summary judgment [Doc. # 39]. The Court has reviewed and considered the papers filed in support of and in opposition to the motions, and heard oral argument on January 20, 2017. For the reasons that follow, the motions are hereby granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiff Yadir A. Ontiveros ("Plaintiff") initiated this action on September 9, 2015, by filing a complaint against Defendants Safelite Group, Inc., Safelite Glass Corp., and Safelite Fulfillment, Inc. [Doc. # 1.] Plaintiff filed a First Amended Complaint ("FAC") against the same defendants on October 28, 2015. [Doc. # 20.] The FAC asserts claims for: (1) failure to pay adequate compensation for overtime work, in violation of Cal. Lab. Code §§ 204, 510, 558, 1194, and 1198; (2) failure to pay overtime, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207; (3) failure to pay minimum wage for all hours worked, in violation of Wage Order 4 and Cal. Lab. Code §§ 1197 and 1182.12; (4) failure to pay premium compensation when workers were denied legally-compliant meal periods, in violation of Cal. Lab. Code § 226.7 and Wage Order 4; (5) failure to pay premium compensation when workers were denied legally-compliant rest periods, in violation of Cal. Lab. Code § 226.7 and Wage Order 4; (6) failure to furnish Plaintiff with accurate and complete wage statements, in violation of Cal. Lab. Code § 226; (7) unlawful deduction of Plaintiff's earned wages, in violation of Cal. Lab. Code § 221; (8) unfair competition, in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* The FAC also asserts a claim under the Private Attorneys General Act ("PAGA"), which effectively duplicates the aforementioned state law claims.

The parties stipulated to dismissal of the FLSA claim, and the Court dismissed this claim without prejudice. [Doc. # 44.][1] The parties also stipulated to dismissal of Safelite Group, Inc., and Safelite Glass Corp., and the Court dismissed these defendants without prejudice. [Doc. # 35 at 2, ¶ 6.] Safelite, the sole remaining defendant, now moves for summary judgment as to all of Plaintiff's remaining counts. [Doc. # 37.]

---

1. On January 11, 2017, the Court issued an order directing Plaintiff to show cause why the Court should exercise jurisdiction over his state law claims, given that Plaintiff had asserted federal jurisdiction based on the existence of a federal question, and then stipulated to dismissal of his only federal claim. [Doc. # 59.] On January 17, 2017, the parties jointly filed a response, arguing that the Class Action Fairness Act, 28 U.S.C. § 1332(d), pro- vides an alternative basis for federal jurisdiction, and that the interests of judicial economy, convenience, fairness, and comity weigh in favor of exercising supplemental jurisdiction. [Doc. # 60.] The Court agrees that the exercise of supplemental jurisdiction is appropriate, particularly since Plaintiff could likely amend his complaint to establish jurisdiction under the Class Action Fairness Act.

Plaintiff moves for summary adjudication of four issues. [Doc. # 39.]

## II. UNDISPUTED FACTS

"Safelite repairs and replaces vehicle glass for automobiles at various locations in California and on a mobile basis throughout California." [Doc. # 50, ¶ 1.] Safelight's technicians are responsible for repairing or replacing windshields both on a mobile basis and at Safelite's retail locations. [¶¶ 3–4.] Technicians are classified as non-exempt employees. [¶ 2.] In August 2009, Safelite hired Plaintiff to work as a warehouse employee. [¶ 5.] In March 2013, Plaintiff became a technician-trainee. [*Id.*] Plaintiff was promoted to technician later that year. [¶ 6.]

Safelite's technicians are compensated pursuant to a Performance Pay Plan ("PPP"). [Doc. # 46–6 at 2.] The PPP document includes a pay table that lists the amount employees will receive for performing particular tasks for a particular type of customer. For example, where the customer is an insurance company, an individual, or a company, employees receive $34.50 for each replacement windshield installed and $15.00 for each repair. [*Id.*] Where the customer is a rental or auction customer, employees receive lower rates for performing the same tasks. [*Id.*]

The PPP document explains how an employee's take-home pay is determined:

**Weekly Advance Pay Based on Hourly Rate.**

Your total PPP earnings can vary from week to week based on changes in your personal productivity. To provide some predictability to your earnings, you will be paid a base hourly rate. That base rate is not intended to be your total pay, since we expect that you will be able to earn more money through the weekly PPP variable pay opportunity.

Each week you will receive a paycheck for the regular and overtime hours worked the previous week. The total hourly pay each week will be treated as an advance against the total PPP variable pay for the week.

**Weekly Productivity Variable Pay**

You will generate a PPP amount for each installation or repair you perform during the week, based on the pay table above. Weekly base pay advances, as described above, will be deducted from the total PPP pay earned for the week. If your PPP pay exceeds the amount paid out in your weekly base pay advance, the amount that exceeds your base pay advance will be added to your paycheck as PPP variable pay. If your PPP variable pay is less than your base pay advance, then you will *not* receive additional pay and a shortfall will be reflected on your paycheck. Shortfalls will not carry over from week to week for this Plan[;] you will have a new opportunity to earn and receive PPP variable pay each week.

[*Id.* at 3.]

The PPP document provides two examples of how compensation will be calculated under the policy. [*Id.*] Example 1 offers the example of an employee who is entitled to a "weekly base pay" of $520, equivalent to $13.00 per hour for 40 hours of work. The employee completes 30 compensable tasks, each of which is compensated at a rate of $34.50, thereby earning a "total productivity variable pay" of $1,035. The company takes the difference between the total productivity variable pay and the weekly base pay, thereby calculating the "PPP incentive." The PPP incentive is then added to the weekly base pay to determine the employee's take-home pay.

The employee in Example 2 is also entitled to a weekly base pay of $520. This employee completes only 14 compensable

tasks, thereby earning a total productivity variable pay of $483. The difference between the employee's total productivity variable pay and the weekly base pay is negative. Thus, the employee's take-home pay will equal his weekly base pay—there will be no incentive-based adjustment. The weekly base pay acts as a floor, below which an employee's take-home pay can never fall.

A second document, the Weekly Associate Productivity Statement, also contains a summary of the PPP. It states:

> Your total earnings can vary week to week based on changes in your personal productivity. To provide some predictability to your earnings, you are paid a base hourly rate, or what is called an "advance." Each week you will receive a paycheck for regular, overtime, or paid-time-off hours worked the previous week. The "advance" is calculated as Regular earnings plus Overtime earnings. Paid-time-off earnings are not included in the advance.
>
> Then, for each installation or repair you perform during the week you will earn a piece rate known as "PPP" rate. The accumulated total of these "PPP" rates will generate a weekly "PPP Bank." If your PPP Bank is greater than your weekly advance, the amount that exceeds your advance will be added to your paycheck as "PPP incentive." If your PPP Bank is less than your weekly advance, you will NOT receive additional pay and a shortfall will be reflected in your paycheck.
>
> Shortfalls will not carry over from week to week for this Plan. You will have a new opportunity to earn and receive PPP incentive pay each week.

[Doc. # 46–4 at 4.]

### III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Furthermore, if "the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

(9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV. ANALYSIS

### A. Minimum Wage, Overtime, and Rest Break Claims

 The central issue in this case is whether the PPP complies with California law governing piece-rate compensation.[2] "Piece-rate compensation involves a method of calculating compensation based on the type and number of tasks completed, rather than by the number of hours worked." *Fowler Packing Co., Inc. v. Lanier*, No. 1:16-CV-00106-DAD (SAB), 2016 WL 3648963, at *1 (E.D. Cal. July 8, 2016). The California Industrial Welfare Commission's Wage Order No. 4 provides that "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." Cal. Code Regs. tit. 8, § 11040(4). California courts have construed Wage Order No. 4 to prohibit employers who use a piece-rate compensation system from averaging productive and non-productive hours for purposes of demonstrating compliance with the minimum wage statute. *See Gonzalez v. Downtown LA Motors, LP ("DTLA")*, 215 Cal.App.4th 36, 155 Cal.Rptr.3d 18 (2013). Thus, although employers may compensate their employees based on the number of tasks completed, employees must receive at least minimum wage for every hour worked, whether or not they complete any compensable tasks during that hour. *See id.*

 Having reviewed the relevant documentation, the Court concludes that the PPP fails to ensure that employees are paid at least minimum wage for each additional hour worked. To see this, consider the following two hypothetical employees. Employee A works 40 hours at a rate of $13 per hour, earning a weekly base pay of $520. She completes 30 compensable tasks during this time, earning total productivity variable pay of $1,035. Her PPP incentive is the difference between the total productivity variable pay and the weekly base play: $1,035 - $520 = $515. The PPP incentive is added to her weekly base pay to yield her take-home pay: $515 + $520 = $1,035.

Employee B is very similar to Employee A. He also earns weekly base pay at a rate of $13 per hour, and he also completes 30 compensable tasks, earning total productivity variable pay of $1,035. And he completes all of these tasks during the first 40 hours of his workweek. But at the end of the week, Employee B's supervisor asks him to come in over the weekend to help clean up the warehouse. Employee B works seven hours on Saturday. He works a total of 47 hours during the week, including seven hours of overtime, bringing his weekly base pay to $656.50. His PPP incentive is the difference between the total productivity variable pay and the weekly base play: $1,035 - $656.50 = $378.50. Adding the PPP incentive to the weekly base pay, we arrive at Employee B's take-home pay: $656.50 + $378.50 = $1,035. Thus, even though Employee B worked

---

**2.** To the extent Safelite disputes that the PPP establishes a piece-rate compensation system, that argument is wholly unpersuasive. The Weekly Associate Productivity Statement specifically describes the PPP as allowing an employee to "earn a piece rate." [Doc. 46–4 at 4.] Moreover, it is clear from the PPP document that technicians are compensated based on the number and type of tasks they complete, subject to a floor that is determined based on the number of hours worked.

seven hours more than Employee A and completed the same number of compensable tasks, his take-home pay is exactly the same. Employee B effectively worked for free on Saturday. This result should not surprise anyone who looks at the PPP formula. Because the PPP incentive is simply the difference between total productivity variable pay and weekly base pay, and take-home pay is the sum of the PPP incentive and weekly base pay, take-home pay will always equal total productivity variable pay.

At oral argument, Safelite's counsel acknowledged that the Court's hypothetical was consistent with the terms of the PPP document. He argued, however, that there was nothing in the record to suggest that anything like the hypothetical happens in practice. Plaintiff's counsel responded by pointing to the declaration provided by Yadir Ontiveros, the named plaintiff, who stated that he routinely had to engage in non-productive work such as attending meetings, cleaning the shop, putting away glass and servicing and washing Safelite's vehicles. [*See* Doc. # 39–3 at 3, ¶ 6]. In the Court's view, this dispute goes to the question of damages, not whether the PPP's design complies with California law. The hypothetical demonstrates that the PPP was designed in such a way that minimum wage violations could result. The parties have not asked the Court to decide at this juncture whether violations did in fact occur.

In its motion and at oral argument, Safelite argued that its compensation system is distinguishable from the one at issue in *DTLA* because the floor in *DTLA* was set at the minimum wage, whereas the floor applicable to Plaintiff was set at a higher rate, ranging from $13.20/hour to $15.00/hour. The Court understands this distinction, but does not find it to be meaningful. The critical point is that Safelite's compensation system fails to insure that minimum wage is paid *on an incremental basis*—in other words, that an employee's take home pay increases by at least the minimum wage for every additional hour worked. The fact that Safelite's system is more generous than required in some respects does not relieve Safelite of the requirement to pay at least minimum wage for every hour worked.

Several conclusions follow. First, the PPP does not ensure that an employee will receive minimum wage for each additional hour worked. Second, the PPP fails to ensure that employees will receive overtime pay. Third, the PPP fails to ensure that employees will be compensated for rest periods. Accordingly, Plaintiff's motion for summary adjudication on this issue is **GRANTED**, and Safelite's motion for summary judgment as to the corresponding issue is **DENIED**.

### B. Meal Period Claim

Under California law, an employer must allow its employees to take a 30 minute meal period "no later than the start of an employee's sixth hour of work" or else pay a penalty. *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1041, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012); *see* Cal. Lab. Code § 512(a). If the employer fails to provide a timely meal period, it must pay the employee "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal ... period is not provided." Cal. Lab. Code § 226.7(c).

Plaintiff argues that Safelite's policy violates California law because it is silent on the timing of the meal period. The Court disagrees. As long as employees are aware of their right to take a meal break within the first five hours of their shift and are not precluded from doing so in practice, the employer may leave the

timing of meal breaks to the employee's discretion. *See Dilts v. Penske Logistics, LLC*, 188 F.Supp.3d 1016, 1020 (S.D. Cal. 2016).[3] It is undisputed that Safelite posted the relevant Wage Orders in every workplace, ensuring that employees knew of their right to take a meal period within the first five hours on the job. [Doc. # 50 at 32, ¶ 33.] There is no evidence in the record that Safelite's employees were precluded in practice from taking timely meal breaks.

Plaintiff also argues that Safelite violated California law because it failed to pay him a meal-period premium in three instances when he took a late meal period. [*See* Doc. # 50 at 64–65, ¶ 70.] In two of those instances, however, Plaintiff took his meal break before the start of his sixth hour of work, meaning that the breaks were not late under *Brinker*. In the third instance, the meal period began after six hours and two minutes. This *de minimis* meal period violation will not preclude summary adjudication. The Court **GRANTS** Safelite's motion to the extent it seeks summary adjudication that its meal period policy is compliant with California law.

### C. Unlawful Deduction Claim

The PPP document sets forth the following policy for warranty work: "Quality is important, so PPP pay for warranty work will be deducted from the original installing technician and awarded to the technician who performs the warranty, assuming the warranty invoice is matched to the original invoice." [Doc. # 46–6 at 4.] Plaintiff argues that any deduction pursuant to this policy was an unlawful deduction in violation of Cal. Lab. Code § 221. Section 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." The California Supreme Court has explained how this provision applies to incentive payments that are contingent upon performance quality:

> [W]here the parties so understand and agree, final compensation, or at least a portion thereof, may be contingent on events that occur after the employee has performed service, and even where he or she has already received advance sums. In such circumstances, the employer may set off, against future payments, any excess amounts previously paid. Such a system does not violate section 221's prohibition on the employer's recapture of wages already earned or paid.

*Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 239, 64 Cal.Rptr.3d 407, 165 P.3d 133 (2007).

■ Safelite's warranty policy is permissible under *Prachasaisoradej*. The PPP document makes it clear that a technician is not entitled to a piece-rate incentive for an installation if a warranty claim is subsequently filed for that installation. Because the parties understood and agreed that a technician's incentive payments might be adjusted in the event of a warranty claim, there is no violation of section 221.

At oral argument, Plaintiff conceded that it was permissible for Safelite to make a deduction from an employee's PPP bank if a warranty claim was filed against the employee based on faulty workmanship.

---

**3.** Plaintiff's case citation is not to the contrary. *See Alberts v. Aurora Behavioral Health Care*, 241 Cal.App.4th 388, 405, 193 Cal. Rptr.3d 783 (2015) (policy providing for "an unpaid thirty-minute break for a meal period, approximately half way between the beginning and ending of the employee's shift" was invalid because evidence showed that, in practice, employees were almost never able to take meal breaks during the first five hours of their shift).

But Plaintiff argued that it was not permissible to make such a deduction if a warranty claim was filed based on a latent defect over which the employee had no control. The Court does not agree. Under *Prachasaisoradej*, final compensation may be contingent on events that occur after the employee has performed service if the parties agree to such an arrangement. Nothing in *Prachasaisoradej* or section 221 prohibits the parties from agreeing to adjust final compensation based on subsequent events that are beyond the employee's control. One would expect such adjustments to be fairly common. For example, a sales associate who earns a commission for each product sold might agree to forfeit such commission if the product is returned, even though a customer's decision to return a product will often have nothing to do with the sales associates' performance.

Here, the parties agreed that a deduction might be made against an employee's PPP bank if a warranty claim was filed. Until late February 2012, this agreement was not limited to warranty claims based on faulty workmanship. Thus, Safelite could lawfully make deductions from an employee's PPP bank for any warranty claim filed, whether the claim was based on faulty workmanship or a latent defect.[4] Safelite's motion for summary judgment is **GRANTED** as to Plaintiff's unlawful deduction claim.

### D. Wage Statement Claim

In California, "[a]n employer ... at the time of each payment of wages, shall furnish to his or her employee ... an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee ... (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis ... (5) net wages earned ... and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee...." Cal. Lab. Code § 226(a). An employee may obtain statutory damages if he "suffer[s] injury as a result of a knowing and intentional failure by an employer to comply with" these requirements. *Id.* at § 226(e)(1). For purposes of this provision, an employee suffers injury where "the employer fails to provide accurate and complete information as required ... and the employee cannot promptly and easily determine from the wage statement alone ... any of the ... information required to be provided on the itemized wage statement...." *Id.* at § 226(e)(2)(B).

■ Plaintiff argues that Safelite's wage statements violated section 226(a) because (1) they failed to list the number of piece-rate units and applicable piece-rates for employees enrolled in the PPP; (2) they failed to list any overtime rates; and (3) they failed to list the overtime wages, applicable overtime rates, or total hours worked for employees who were enrolled in the installation bonus program.

The Court agrees with Plaintiff that Safelite's wage statements for employees enrolled in the PPP violated subsection (a)(3). The Court has already concluded that Plaintiff was compensated on a piece-rate basis. It is undisputed that Plaintiff's wage statements did not reflect the number of piece-rate units earned or the applicable rates paid per unit of production.

---

4. In late February 2012, the agreement was modified to state that technicians "will no longer have a PPP deduction for product-related warranty work." [Doc. 50–5 at 2.] Thus, after this point, any deduction made based on a product-related warranty claim would be inconsistent with the parties' agreement and would constitute an unlawful deduction. There is no evidence in the record, however, that Safelite made such deductions.

[Doc. # 46 at 15, ¶ 19.] Safelite has made no effort to show that Plaintiff could promptly and easily determine this information from the wage statement alone.

■ The Court does not agree with Plaintiff that Safelite's wage statements were deficient for failure to include the overtime rate.[5] It is undisputed that the wage statements did not list an overtime rate of pay. [Doc. # 46 at 15, ¶ 18.] It is possible, however, to promptly and easily determine that rate based on the information provided. The overtime rate is one-and-one-half times the "regular rate," which is determined "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked." 29 C.F.R. §§ 778.107, 778.109. In the example discussed in Plaintiff's motion [Doc. # 39 at 19–20], the total remuneration is equal to the amount in the PPP Bank. The wage statement shows that Plaintiff had $551.75 in his PPP Bank, and that he worked a total of 32.48 hours. Simple division ($551.75/32.48) yields the regular rate, approximately $16.99. Multiplying this by 1.5 yields the overtime rate, $25.49.[6] Courts have held that "[w]age statements comply with § 226(a) when a plaintiff employee can ascertain the required information by performing simple math, using figures on the face of the wage statement." *Hernandez v. BCI Coca–Cola Bottling Co.*, 554 Fed.Appx. 661, 662 (9th Cir. 2014) (citing *Morgan v. United Retail Inc.*, 186 Cal.App.4th 1136, 113 Cal.Rptr.3d 10 (2010)). That is the case here.

Finally, the Court agrees with Plaintiff that Safelite's wage statements were deficient for failing to report overtime wages associated with installation bonuses. It is undisputed that Plaintiff earned additional overtime wages if he worked overtime during the same period that an installation bonus was earned, as this bonus would lead to an increase in his regular rate under 29 C.F.R. § 778.109. [Doc. # 46 at 16–17, ¶ 22.] It is also undisputed that when Plaintiff earned installation bonuses, his wage statements reflected both the underlying bonus earned and the additional overtime wages owed as a single line item. [*Id.* at 17, ¶ 23.] Finally, it is undisputed that the wage statement does not have information from which Plaintiff could calculate the additional overtime owed as a result of participation in the installation bonus program. [Doc. # 39–2 at 71.] The Court concludes that the "regular rate" is an "applicable hourly rate." [7] As such, the law requires that the regular rate appear on the face of the wage statement or else be ascertainable from the information included therein. Because it was not possible to promptly and easily determine the regular rate from the wage statements when an employee was enrolled

---

5. Penalties under section 226(e)(1) are awarded on an all-or-none basis; the amount awarded does not increase if there are multiple violations in the wage statement. *See generally* Cal. Lab. Code § 226(e)(2) (the same penalties are available whether an employer provides a defective statement or fails to provide a wage statement at all). The Court has already determined that Plaintiff's wage statements were defective during the period when he was enrolled in the PPP, because the statements failed to include required piece-rate information. Nonetheless, the Court proceeds to determine whether Safelite's wage statements were otherwise compliant with section 226(a), because this may affect putative class members who were not enrolled in the PPP.

6. The overtime premium is calculated by taking the difference between the overtime rate and the regular rate (here, $25.49 - 16.99 = $8.50) or, what is mathematically the same, by multiplying the regular rate by 0.5 (here, $16.99(0.5) = $8.50).

7. Safelite argues that section 226(a)(9) does not require the employer to provide the regular rate, but cites no authority for that proposition.

in the installation bonus program, the statements were deficient.

Safelite does not argue that the piece-rate information or the regular rate associated with the installation bonuses were inadvertently omitted from the wage statement. Instead, it argues that it omitted the information because it thought the information was not required. That constitutes a "knowing and intentional failure" to comply with the statute. *See Novoa v. Charter Commc'ns, LLC*, 100 F.Supp.3d 1013, 1029 (E.D. Cal. 2015) ("a mistake of law—even when made in good faith—does not prevent Defendant's conduct from knowingly and intentionally failing to comply with subdivision (a)"). Because these violations were committed knowingly and intentionally and Plaintiff suffered injury as a result, Plaintiff is entitled to penalties for these violations. Plaintiff's motion for summary adjudication as to the deficient wage statement claim is **GRANTED**.

## E. Artificial Dilution Argument

 In his opposition to Safelite's motion and at oral argument, Plaintiff argued that he could recover on his overtime and wage statement claims based on an "artificial dilution theory." Plaintiff presents evidence that Safelite paid each meal penalty by adding an additional hour to the employee's total number of hours. [Doc. # 50 at 65–66, ¶ 71]. It was a mistake to report meal penalties in this way: although meal penalties are paid at the rate of "one additional hour of pay," (Cal. Lab. Code § 226.7(c)) they are not considered actual working time under California law. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1113, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007) ("[T]he section 226.7 payment . . . uses the employee's rate of compensation as the measure of pay and compensates the employee for events *other*

*than time spent working.*") (emphasis added).

Nor was this mistake harmless. Under federal law, overtime pay is calculated by reference to the employee's "regular rate," which is defined by reference to the number of hours the employee worked during a given workweek. 29 C.F.R. §§ 778.107, 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). By inflating the number of hours worked, Safelite made it seem as though the employee's "regular rate" was lower than it actually was. As a result, Plaintiff may have been denied overtime pay to which he was entitled.

Safelite argues that this argument is not properly before the Court because it was not disclosed in the FAC or in Plaintiff's motion for partial summary judgment. But the artificial dilution argument is not a freestanding claim for relief. There is no requirement that the complaint contain all legal theories or arguments that a party intends to assert in support of his claims. *See* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Alvarez v. Hill*, 518 F.3d 1152 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories."). Nor does a party forfeit an argument by failing to raise it in a motion for summary judgment. *Cf. Move, Inc. v. Real Estate All. Ltd.*, 2016 WL 7635953, at *4 (C.D. Cal. Dec. 1, 2016) ("we are aware of no authority suggesting that [a party is] required to move for summary judgment on [an] argument in order to preserve th[e] argument") (citing *Street v. Corr. Corp. of Am.*, 102 F.3d

810, 816 (6th Cir. 1996)).[8] The argument remains available for Plaintiff to pursue at trial.

### F. Violations Before June 4, 2013

In 2013, Safelite settled a related class action, *Lewis v. Safelite Fulfillment, Inc.*, 11–cv–5512–CRB, 2011 WL 9362641 (N.D. Cal., Nov. 14, 2011). [Doc. # 50 at 5–6, ¶ 9.] This settlement resolved all claims related to overtime, meal period, and minimum wage violations occurring between November 14, 2007 and June 3, 2013. [*Id.*] Plaintiff was a class member in the *Lewis* settlement and did not opt out of the settlement. [*Id.* at 6, ¶ 10.] Thus, the parties agree that "Plaintiff has released his alleged minimum wage, overtime, and meal break claims (and their related derivative claims for unfair business practices, itemized wage statements, and PAGA penalties) in this case to the extent they occurred on or before June 3, 2013[.]" [*Id.* at 6–7, ¶ 11.] Safelite's motion for summary judgment is **GRANTED** as to any claims released in the *Lewis* settlement.

### V. CONCLUSION

In light of the foregoing, the Court orders as follows:

1. The Court **GRANTS** Plaintiff's motion for summary adjudication as to these issues: (1) the PPP does not ensure that an employee will receive minimum wage for each additional hour worked; (2) the PPP does not ensure that employees will receive overtime pay; (3) the PPP does not ensure that employees will be separately compensated for rest periods; (4) Plaintiff is entitled to penalties under Cal.

Lab. Code § 226(e)(1) for each wage statement issued during the time when he was enrolled in the PPP that failed to include the required piece rate information; and (5) to the extent it is not duplicative of item no. 4, *supra*, Plaintiff is entitled to penalties under section 226(e)(1) for each wage statement issued during the time he was enrolled in the installation bonus program that failed to indicate the effect of the bonus program on the regular rate.

2. The Court **GRANTS** Safelite's motion for summary judgment as to Plaintiff's unlawful deduction claim, and as to all claims released in the *Lewis* settlement. The Court also **GRANTS** summary adjudication for Safelite on the issue of whether its meal period policy is compliant with California law.

3. The parties' motions for summary judgment or partial summary judgment are otherwise **DENIED**.

**IT IS SO ORDERED.**

---

8. *Sturm v. Davlyn Invs. Inc.*, 2013 WL 8604662, at *14 (C.D. Cal. Sept. 30, 2013), is not to the contrary. There, the complaint asserted a negligence claim against the owners and operators of an apartment complex, while the opposition to summary judgment sought to defend a vicarious liability claim based on the defendants' employees' alleged

negligence. This was effectively a new claim for relief, and the defendant would have been prejudiced in having to defend against this new claim without claim-specific discovery. In contrast, here, Plaintiff's argument relies on the legal authorities set forth in the claim and will not require claim-specific discovery.