Filed 5/30/18

# <u>CERTIFIED FOR PARTIAL PUBLICATION\*\*</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| FABIO CANALES et al., | B276127 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC502826) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed.

Law Offices of Sherry Jung and Larry W. Lee; Hyun Legal, Dennis S. Hyun for Plaintiffs and Appellants.

Kading Briggs, Glenn L. Briggs, Theresa A. Kading and Nisha Verma, for Defendant and Respondent.

_____

\*\* Pursuant to California rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts III(B) and III(C).

# I. INTRODUCTION

Plaintiffs Fabio Canales and Andy Cortes, on behalf of themselves and class members, appeal from a summary judgment. Plaintiffs were former or current non-exempt employees of defendant Wells Fargo Bank, N.A. Plaintiffs alleged that their wage statements failed to include information required under Labor Code[1] section 226, subdivision (a)(9). Specifically, plaintiffs argued that a line on the wage statement, "OverTimePay-Override," should, but did not, include hourly rates and hours worked. Plaintiffs also alleged defendant violated section 226 by failing to provide a wage statement concurrently with the terminated employees' final wages paid in-store. Plaintiffs moved for summary adjudication on the section 226 cause of action.

Defendant in its summary judgment motion argued that OverTimePay-Override reflected additional overtime pay that was owed for work performed on a previous pay period, but could not be calculated because it was based on a nondiscretionary bonus not yet earned. Under subdivision (a)(9), defendant contended OverTimePay-Override did not have corresponding hourly rates or hours worked for the current pay period. As to plaintiffs' second theory, defendant asserted it complied with the statute by furnishing the wage statement by mail. The trial court found in favor of defendant and against plaintiffs.

---

[1] Further statutory references are to the Labor Code unless otherwise indicated.

Plaintiffs contend the trial court erred by denying their summary adjudication motion and by granting defendant's motion. We affirm.

## II. BACKGROUND

A. *Factual Background*[2]

Plaintiffs are current or former non-exempt California employees of defendant. Defendant would in some instances issue a paycheck and wage statement that contained nondiscretionary incentive compensation[3] (the bonus) to employees who worked during the period covered by the incentive compensation. These bonus periods would be monthly, quarterly, or annually. For employees who worked overtime during those bonus periods, the wage statements contained a line item called "OverTimePay-Override," formerly called "OT-Flat." OverTimePay-Override listed incremental additional overtime paid to the employee for overtime hours worked during the bonus

---

[2] All facts are considered undisputed for purposes of summary judgment.

[3] Teresa Swanson, defendant's person most knowledgeable, stated that a nondiscretionary bonus was "given to a team member, based on some sort of preset work definition, goal, something that they have to meet. And then they earn that bonus." It appears this bonus was a production or piecework bonus.

period under the "Earnings" column.[4]  For the OverTimePay-Override line on the wage statements, no hourly rates or hours worked was identified.

In certain situations, defendant issued final wages to employees at the time of their termination through "in-store payments" made by cashier's check.  Defendant's payroll department would then create the wage statement either the same day or the next day and mail it to the terminated employee by United States mail.[5]  During their employment, employees had online access to their itemized wage statements.  Employees lost such online access the day after termination.

---

[4]     To calculate the amount to be entered on the OverTimePay-Override line:  (1) take the bonus earned during the bonus period, whether it be by year, quarter, or month; (2) divide the bonus by the total number of hours worked during the bonus period; (3) multiply the resulting number by 0.5; (4) multiply the resulting number by the total number of overtime hours worked during the bonus period.

Our Supreme Court in a recent decision concerning flat sum bonuses under California law decided that the proper method for calculating the rate of overtime pay when an employee receives both an hourly wage and a flat sum bonus is to divide the bonus by the number of nonovertime hours actually worked during the bonus period.  (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 562 (*Alvarado*).)  The Supreme Court specifically excluded production or piecework bonuses or a commission from its holding.  (*Id.* at p. 561, fn. 6.)

[5]     Plaintiffs asserted in their opening brief, without citation to the record, that they never received their wage statements.  We will disregard such assertions as meritless.  (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1416.)

4

B. *First Amended Complaint*

Plaintiffs filed their first amended complaint, the operative pleading, on June 20, 2013.  Plaintiffs sued on behalf of themselves and a class composed of (1) current or former non-exempt California employees of defendant who received OverTimePay-Override from March 13, 2012 to present and (2) all former California employees of defendant who were terminated from March 13, 2012 to present and were paid their final wages through the "in-store payment" procedure.  In their first cause of action, plaintiffs alleged defendant violated section 226[6] by failing to identify the hourly rates and the hours worked

---

[6]     At the time of the alleged offenses, section 226, subdivision (a)(9) provided in pertinent part:  "(a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."  (Stats. 2012, ch. 844, § 1.7.)  Subdivision (a)(9) was added by the Legislature in 2000.  (Stats. 2000, ch. 876, § 6.)

Section 226, subdivision (a) was amended by the Legislature in 2016 to read in pertinent part:  "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing . . . ."  (Stats. 2016, ch. 77, § 1, eff. Jan 1, 2017.)  Subdivision (a)(2) was also amended, and subdivision (j) was added.  (*Ibid*.)  The 2016 amendment does not substantively affect our opinion.

5

that corresponded to OverTimePay-Override. Plaintiffs also alleged defendant violated section 226 by failing to provide terminated employees with wage statements immediately upon termination. Plaintiffs alleged a second cause of action pursuant to the Private Attorneys General Act (§ 2698 et seq.) (PAGA) for violation of section 226.[7]

## C. *Summary Adjudication/Judgment Motions*

On December 15, 2015, plaintiffs moved for summary adjudication.[8] Much like the allegations in their amended complaint, plaintiffs argued that defendant violated section 226, subdivision (a)(9) by failing to specify the hourly rates and number of hours worked for the OverTimePay-Override adjustment on the itemized wage statements. Plaintiffs also argued defendant violated section 226 by failing to provide to terminated employees an itemized wage statement concurrently with their final wages that were paid in-store by cashier's check.

Defendant filed its own summary judgment motion on December 15, 2015. Defendant asserted it did not violate section 226, subdivision (a)(9) because OverTimePay-Override represented an increase in overtime pay, based on a periodic

---

[7] A third plaintiff, Luciano Gonzales, was initially part of this action. However, Gonzales was not named as a class representative in plaintiffs' motion for class certification and is not an appellant. The class was certified on March 20, 2015.

[8] Though plaintiffs categorized their motion as one for summary judgment or in the alternative, summary adjudication, plaintiffs sought only summary adjudication as to their first cause of action for violation of section 226.

bonus, for overtime hours worked in previous pay periods. Defendant argued there were no "applicable **hourly rates** in effect **during the pay period**" that corresponded to OverTimePay-Override and thus defendant did not have to provide such information on the wage statement. As to plaintiffs' second theory, defendant contended it furnished the itemized statement as required under section 226 by mailing it to the terminated employee's last known address either the same day or the next day. Finally, defendant argued plaintiffs' PAGA cause of action failed because it was wholly derivative of a violation based on section 226 and because plaintiffs failed to exhaust administrative remedies. Plaintiffs do not dispute their PAGA cause of action is derivative of the section 226 claims.

On May 26, 2016, the trial court issued its order granting defendant's motion and denying that of plaintiffs. As to defendant's first argument, the trial court agreed that section 226, subdivision (a)(9) did not apply to OverTimePay-Override because there was no applicable hourly rate for the pay period reflected in the wage statement. For defendant's second argument, the trial court found that defendant complied with the "furnish" requirement under section 226 by mailing the wage statement.

## III. DISCUSSION

A. *Standard of Review*

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to

7

judgment as a matter of law.  That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon.  [Citation.]  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . .  [¶]  [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .  A prima facie showing is one that is sufficient to support the position of the party in question.  [Fns. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.)

We review an order granting summary judgment de novo. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)  The trial court's stated reasons for granting summary judgment are not binding because we review its ruling not its rationale.  (*Ibid*.)  In addition, a summary judgment motion is directed to the issues framed by the pleadings.  (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.)  These are the only issues a motion for summary judgment must address.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

This appeal solely involves statutory interpretation.  "The proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is . . . subject to de novo review." (*Morgan v. United Retail Inc.* (2010) 186

8

Cal.App.4th 1136, 1142 (*Morgan*).) "'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107; *Morgan, supra*, 186 Cal.App.4th at pp. 1142-1143.)

B. *Nondiscretionary Bonuses and Overtime Pay*

We first discuss the nature of nondiscretionary bonuses and how they relate to overtime pay under the Labor Code. Pursuant to section 510, subdivision (a), an employer must pay one and a half times an employee's "regular rate of pay" if he or she works more than 40 hours per week or more than 8 hours per day. Nondiscretionary bonuses are considered part of the "regular rate

9

of pay." (*Marin v. Costco Wholesale Corp.* (2008) 169 Cal.App.4th 804, 807 (*Marin*); see 29 C.F.R. § 778.209 (2012) [federal method of explaining regular rate of pay calculation for bonuses].)

In order to calculate overtime pay for an employee paid at an hourly rate, an employer must allocate the bonus over the period in which it was earned. (*Marin, supra*, 169 Cal.App.4th at p. 807; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2017) ¶ 11:906 ["A bonus or prize paid in cash is allocated *over the period during which it was earned* to determine the increase in the average hourly rate for each week of the period"].) To explain this using an example, take a hypothetical employee wage statement for the period of January 7 to January 20, 2018.[9] This hypothetical wage statement would include an hourly regular rate, the number of regular hours worked during the pay period of January 7 to January 20, the hourly overtime rate, and the number of overtime hours worked during the pay period of January 7 to January 20. The hypothetical employee earned a $360 monthly bonus for work performed during the previous month of December, from December 1 to December 31, 2017. This bonus would be reflected on the January 7 to January 20, 2018 wage statement.[10] To calculate the OverTimePay-Override line, the

---

[9] We have provided these dates, but defendant used the hours and bonus figures in their respondent's brief as an illustration to calculate OverTimePay-Override. Plaintiffs have not disputed the accuracy of defendant's method.

[10] Section 204, subdivision (b)(1) provides, "all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period."

10

hours worked in December 2017 would be used because that is the time period in which the bonus was earned. In this hypothetical, the employee had worked 160 regular hours and 20 overtime hours in December 2017, for a total of 180 hours. First, divide $360 by 180, which results in $2. This number represents the increase to the regular hourly rate. Multiply $2 by 0.5 and the result, $1, represents the increase to the overtime hourly rate. Then, take $1 and multiply it by 20, the overtime hours worked during December 2017, and the result, $20, is the overtime pay adjustment, which would be identified as the OverTimePay-Override line on the wage statement. This allocation, at least for production or piecework bonuses, is calculated by using the method described above in footnote 4.

C. *Section 226, Subdivision (a)(9) Does Not Require Hourly Rate and Hours Worked to be Identified For OverTimePay-Override*

The Court of Appeal in *Morgan* discussed the purpose of section 226, subdivision (a)(9): "The 2000 amendment [which added subdivision (a)(9)] . . . expanded the scope of information to be included by employers in the itemized wage statements furnished to employees. Following the amendment, an employer

---

Plaintiffs contend that pursuant to *Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 669, defendant was prevented from paying OverTimePay-Override for wages earned in prior pay periods. *Peabody v. Time Warner Cable, Inc.*, is inapposite. In that case, our Supreme Court held an employer could not attribute wages paid in one period to a prior pay period in order to meet an exemption for minimum wages. (*Ibid.*) It has no application to the OverTimePay-Override line at issue here.

11

that previously listed the total hours worked by an employee in a single category [as required under subdivision (a)(2)] was now required to list both the total regular hours worked and the total overtime hours worked, along with the corresponding hourly rates. It appears that by adding this more specific requirement, the statute made it easier for employees to determine whether they were being paid for all hours worked at the appropriate rates of pay." (*Morgan, supra*, 186 Cal.App.4th at p. 1148.)

Subdivision (a)(6) requires that the wage statement show "the inclusive dates of the period for which the employee is paid." Applying the standards of statutory construction, in the context of section 226 as a whole, the "pay period" discussed in subdivision (a)(9), which requires that the wage statement include "all applicable hourly rates in effect during the pay period," refers to the period described in subdivision (a)(6). In our hypothetical wage statement above, we interpret the pay period to refer to the two-week period covered by the wage statement, January 7 to January 20, 2018.

Defendant argues it was not required to provide on the wage statement hourly rates or hours worked related to OverTimePay-Override. Defendant has met its initial burden of production. (Code Civ. Proc., § 437c, subd. (p)(2).) Based on the above statutory construction and the method by which OverTimePay-Override was calculated, there were no "applicable ***hourly rates*** in effect ***during the pay period***" that corresponded to OverTimePay-Override. Accordingly, there was also no "corresponding number of hours worked at each hourly rate by the employee" for the pay period that applied to OverTimePay-Override. As discussed above, OverTimePay-Override represented additional wages that were earned as

12

overtime pay based on nondiscretionary bonuses being spread over the hours worked during the bonus period. Moreover, based on how OverTimePay-Override was calculated, the overtime hours were worked in *previous* pay periods for which employees had already received their standard overtime pay. The itemized wage statement issued by an employer need only provide the applicable hourly rates and the corresponding number of hours worked "in effect during the pay period." In other words, the employer need only identify on the wage statement the hourly rate in effect during the pay period for which the employee was *currently* being paid, and the corresponding hours worked.

Plaintiffs argue to the contrary, but have failed to meet their burden. (Code Civ. Proc., § 437c, subd. (p)(2).) "[S]ection 226, subdivision (a) is highly detailed, containing nine separate categories that must be included on wage statements . . . . When a statute omits a particular category from a more generalized list, a court can reasonably infer a legislative intent not to include that category within the statute's mandate." (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 391.) The purpose of spreading the bonus over the hours worked during the bonus period is to calculate the "regular rate of pay" for overtime under section 510. Defendant's wage statements included the regular rate of pay, the overtime rate of pay, and the hours worked at each rate. Each of these was "in effect during the pay period," January 7 to January 20 in our example. The OverTimePay-Override was an adjustment to the overtime payment due to an employee, based on bonuses earned by the employee for work performed during prior pay periods. Accordingly, there were no applicable hourly rates in effect during the pay period which defendant was required to include in the wage statement.

13

Plaintiffs contend a federal district court case, *Ontiveros v. Safelite Fulfillment, Inc.* (C.D.Cal. 2017) 231 F.Supp.3d 531 (*Ontiveros*) is directly on-point and supports their position. In *Ontiveros*, the district court found that the employer's wage statements were deficient for failing to report overtime wages associated with an installation bonus. (*Id.* at pp. 540-541.) The district court reasoned: "It is undisputed that Plaintiff earned additional overtime wages if he worked overtime during the same period that an installation bonus was earned, as this bonus would lead to an increase in his regular rate under 29 C.F.R. § 778.109. . . . It is also undisputed that when Plaintiff earned installation bonuses, his wage statements reflected both the underlying bonus earned and the additional overtime wages owed as a single line item. . . . Finally, it is undisputed that the wage statement does not have information from which Plaintiff could calculate the additional overtime owed as a result of participation in the installation bonus program. . . . The Court concludes that the 'regular rate' is an 'applicable hourly rate.' As such, the law requires that the regular rate appear on the face of the wage statement or else be ascertainable from the information included therein. Because it was not possible to promptly and easily determine the regular rate from the wage statements when an employee was enrolled in the installation bonus program, the statements were deficient. [Fn. omitted.]" (*Ibid.*)

*Ontiveros* is distinguishable. *Ontiveros* involved a piece-rate compensation, paid weekly. (231 F.Supp.3d at p. 535.) Additionally, the bonus earned and additional overtime wages were reflected on the wage statement on one line, rather than being separated. (*Id.* at p. 540.) Finally, the bonus was based on

work performed during the pay period reflected in the wage statement. (See *id.* at p. 534.)

Plaintiffs also cite a May 17, 2002 opinion letter from the Division of Labor Standards Enforcement (DLSE). That letter concerned a unique situation in which an employer continually listed 86.67 hours as the hours worked by its employees during each pay period, regardless of whether it was true. The DLSE was concerned with an employer's failure to list all hours worked during the pay period, including overtime. To the extent the DLSE determined an employer must comply with section 226 when making additional overtime payments for work performed in prior pay periods, we conclude the DLSE opinion letter is not applicable. Accordingly, we find defendant should prevail as a matter of law on this theory.

D. *No Violation for not Providing an Itemized Statement at Time of Termination*

Defendant argues it is in compliance with section 226, subdivision (a) because it "furnished" the wage statement to the discharged employee by United States mail. As noted, section 226, subdivision (a) provided, "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing . . . ." It is undisputed defendant provided some discharged employees with their last wages in-store by cashier's check, in compliance with the Labor Code. (See §§ 201, subd. (a) ["[i]f an employer discharges an

15

employee, the wages earned and unpaid at the time of discharge are due and payable immediately"], 208 ["[e]very employee who is discharged shall be paid at the place of discharge"].)  "Furnish" means to "provide with what is needed," or to "supply" or "give." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 474, col. 1.)  Section 226 provides that an employer must furnish the wage statement as either "a detachable part of the check, draft, or voucher paying the employee's wages," or separately when the wages are paid by personal check or cash.  Other than that one provision, section 226 describes no other specific means by which an employer is to furnish the itemized statement to an employee. Thus, mailing the wage statement is a viable means to "furnish." Defendant could also furnish the wage statement separately because paying discharged employees by cashier's check was the equivalent of paying them by cash.[11]  However, the Legislature also provided for *when* an employer was to furnish the wage statement to the employee:  "semimonthly or at the time of each payment of wages."

---

[11]    As argued by defendant, a cashier's check was the equivalent of paying by cash.  (See *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 893-894, 896 [citing U. Com. Code, § 3310, cashier's check taken for obligation has same effect as cash].)  Plaintiffs argue for the first time in their reply brief that a cashier's check is not the equivalent of a personal check or cash for purposes of section 226.  This issue was not raised in the opening brief nor before the trial court and is therefore waived and forfeited.  (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18; *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)

16

We first find that for purposes of the Labor Code, "at the time of each payment of wages" for discharged employees means "immediately." As noted, a discharged employee's unpaid earned wages are due and payable "immediately." (§ 201, subd. (a).) When construing section 226 in relation to the Labor Code, the most logical construction of "at the time of each payment of wages" in section 226 for discharged employees is whenever the discharged employee receives his or her unpaid earned wages, which is "immediately." Because defendant in some instances did not provide wage statements immediately to discharged employees, but rather mailed the statement to the employee's last known address the same day or the next day, defendant did not furnish the wage statement to these discharged employees "at the time of each payment of wages."

However, by the plain meaning of the statute, defendant also had the option of furnishing the wage statement semimonthly. (§ 226, subd. (a).) Additionally, nothing in section 226 suggests that an employer cannot furnish the wage statement prior to the semimonthly date. For example, suppose an employer furnishes wage statements on the first and the fifteenth of each month. The employer discharges an employee on the second of the month. Per the statute's plain language, if an employer pays the final wages by personal check or cash, it has the option of furnishing the discharged employee with the wage statement on the fifteenth. We find it illogical to conclude an employer violates section 226 by furnishing a wage statement *before* the semimonthly date has been reached. If the employer furnishes the wage statement to the discharged employee on the fifth of the month, the employer has complied with the requirement that it furnish the wage statement to the employee

17

"semimonthly" because the employee would have ostensibly been furnished with the wage statement by the semimonthly date.

For purposes of section 226, if an employer furnishes an employee's wage statement before or by the semimonthly deadline, the employer is in compliance. Thus, we interpret "semimonthly or at the time of each payment of wages" as representing the outermost deadlines by which an employer is required to furnish the wage statement. Since defendant mailed the wage statement to certain discharged employees paid in-store by the same day as or the next day after termination, defendant was in compliance with section 226 because the employee was "furnished" with the wage statement semimonthly. Defendant has met its initial burden of production. (Code Civ. Proc., § 437c, subd. (p)(2).)

Plaintiffs contend the wage statement must be furnished immediately for a discharged employee. Plaintiffs cite the DLSE Policies and Interpretations Manual (DLSE Manual), section 14.1.1, which provides, "[a] California employer must furnish a statement showing the following information to each employee at the time of payment of wages (or at least semimonthly, whichever occurs first)," and section 14.1.2, which provides, "[s]ection 226 . . . sets out the employer's responsibilities in connection with the wage statement which must accompany the check or cash payment to the employee."

Plaintiffs have not met their burden. (Code Civ. Proc., § 437c, subd. (p)(2).) There is no evidence in the record that the DLSE adopted this interpretation in accordance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.). Thus, it is the equivalent of a void underground regulation. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576-

18

577.)  As our Supreme Court held, "when an agency like the DLSE sets forth an interpretive policy in a void underground regulation, the deference that the agency's interpretation would normally enjoy is absent, but in its place the agency has its power to persuade."  (*Alvarado, supra*, 4 Cal.5th 542, 559.)

The DLSE's interpretation is not persuasive.  The term "whichever occurs first" is not in section 226.  The plain meaning of the statute indicates the Legislature specifically intended a choice for employers as to when to furnish the wage statement.  There is also no requirement in section 226 that the wage statement "must accompany" the personal check or cash payment to the employee.  As noted, the wage statement must be a detachable part of the check, draft, or voucher, *unless* payment is by personal check or cash; in such instance the wage statement may be furnished separately.  (§ 226, subd. (a).)  Accordingly, we decline to follow the DLSE's interpretation.

Plaintiffs cite several cases that purportedly determined that section 226, subdivision (a) requires employers to furnish a wage statement to each employee "at the time wages are paid." (See *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 591 (*Zavala*); *Reinhardt v. Gemini Motor Transport* (E.D.Cal. 2012) 879 F.Supp.2d 1138, 1141 (*Reinhardt*); *In re Bimbo Bakeries USA FLSA Actions* (N.D.Cal. Oct. 24, 2008, No. C 05-00829 JW) 2008 WL 10850153, at *7, 2008 U.S. Dist. Lexis 125068, at *23 (*Bimbo Bakeries*).)  Such statements were dicta as the cases concerned issues unrelated to the one here.  (*Zavala, supra*, 143 Cal.App.4th at pp. 592-593 [whether collective bargaining agreement required arbitration of Labor Code claims]; *Reinhardt, supra*, 879 F.Supp.2d at pp. 1141-1142 [whether plaintiffs sufficiently alleged Labor Code violations were

"knowing and intentional'" for recovery under § 226, subd. (e)]; *Bimbo Bakeries, supra,* 2008 WL 10850153, at *7, 2008 U.S. Dist. Lexis 125068, at *24 [whether defendant's violation was "knowing and intentional" for summary judgment purposes].) They are thus unpersuasive.

Defendant should prevail on this theory. Because there are no triable issues of material fact and defendant is entitled to judgment as a matter of law, summary judgment was properly granted in its favor.

## IV. DISPOSITION

The judgment is affirmed. Defendant Wells Fargo Bank, N.A. is entitled to recover its costs on appeal from plaintiffs Fabio Canales and Andy Cortes.

CERTIFIED FOR PARTIAL PUBLICATION

KIM, J.*

We concur:

KRIEGLER, Acting P.J.          BAKER, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20