Filed 11/8/22  Timmons v. City of Aliso Viejo CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| AMANDA TIMMONS, | |
| Plaintiff and Appellant, | G060627 |
| v. | (Super. Ct. No. 30-2019-01059119) |
| CITY OF ALISO VIEJO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Charles Margines, Judge.  Reversed.

Raymond Ghermezian, for Plaintiff and Appellant.

Kutak Rock, Edwin J. Richards, Kevin J. Grochow, for Defendant and Respondent.

\*          \*          \*

A public entity may be liable for a dangerous condition of public property that creates a substantial (nontrivial) risk of injury. (Gov. Code, § 835 et seq.)[1] "In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect . . . ." (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1105 (*Huckey*).) "The court should consider other circumstances which might have rendered the defect a dangerous condition . . . ." (*Ibid.*)

Amanda Timmons tripped and fell as she walked from a city street onto a sidewalk. A concrete gutter was over one inch lower than the asphalt street; the asphalt was broken and jagged.

Timmons sued the City of Aliso Viejo (the City) alleging a dangerous condition of public property and vicarious liability. (§§ 835, 815.2.) The City filed a motion for summary judgment arguing there was not a dangerous condition as a matter of law, and it did not have sufficient notice. The trial court granted the motion.

On appeal, we think reasonable jurors might disagree as to whether the condition was dangerous and whether the City had notice. That is, we find triable issues of material fact. Thus, we reverse the trial court's order granting the City's motion.


I

FACTS AND PROCEDURAL BACKGROUND

In May 2018, Timmons was walking on a street during her lunch break. As she attempted to step from the street onto the sidewalk, Timmons tripped where the gutter meets the street and fell into the curb. The concrete gutter was about one to two inches lower than the asphalt street, which was jagged and broken.

Timmons filed a complaint against the City alleging: 1) a dangerous condition of public property; and 2) vicarious liability for wrongful acts or omissions by

---

[1] Further undesignated statutory references are to the Government Code.

public entity employees. (§§ 835 et seq., 815.2.)

The City filed a motion for summary judgment with transcripts, discovery responses, photographs, declarations, and a statement of material facts. Timmons filed an opposition with transcripts, photographs, an expert declaration, evidentiary objections, a response to the City's statement of facts, and her own statement of facts. The City filed a reply with evidentiary objections, and responses to Timmons' statement of facts (the pleadings will be reviewed in the discussion section of this opinion).

After a hearing, the trial court issued an order ruling on the evidentiary objections and granting the motion. The court found the City "has established the lack of notice of the condition of the area where [Timmons] was injured. Thus, even if the height differential, asphalt rubble, and the other factors relied on by [Timmons] combined to create a dangerous condition, if [the City] lacked notice thereof, the existence of the dangerous condition fails to provide grounds for liability."

II

DISCUSSION

In the motion for summary judgment, the City argued there was not a dangerous condition as a matter of law, and there was no evidence it had sufficient notice of the condition of the street where the slip and fall accident occurred. We disagree.

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party has the initial burden to make a prima facie showing that no triable issue of material fact exists. If met, the party opposing the motion has the burden of showing the existence of disputed facts. (*Id.* at p. 843.)

We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) "In determining if the papers show that there is

3

no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

In this discussion we will: A) review relevant legal principles, B) summarize the moving papers, and C) analyze the law as applied to the facts.

*A. Relevant Legal Principles* (*Dangerous Condition and Notice*)

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (a) & (b).)

A "'dangerous condition'" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

"A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features *or relationship to its surroundings* that endanger users." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347-1348 (*Cerna*), italics added.) "The existence of a

4

dangerous condition is ordinarily a question of fact but 'can be decided as a matter of law if reasonable minds can come to only one conclusion.'" (*Id.* at p. 1347.)

"A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature *in view of the surrounding circumstances* that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2, italics added.)

"This principle, referred to as the 'trivial defect doctrine' . . . is not an affirmative defense, but 'an aspect of duty that a plaintiff must plead and prove.' [Citations.] That is so because a property owner's duty of care 'does not require the repair of minor or trivial defects.'" (*Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 757 ["'persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition'"].)

"In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect—in this case, on the depth or height of the walkway depression or elevation—although the defect's size 'may be one of the most relevant factors' to the court's decision. [Citation.] The court should consider *other circumstances* which might have rendered the defect a dangerous condition at the time of the accident. [Citation.] [¶] These *other circumstances* or factors include whether there were any broken pieces or jagged edges in the area of the defect . . . . [Citation.] In sum, '[a] court should decide whether a defect may be dangerous only after *considering all of the circumstances* surrounding the accident that might make the defect more dangerous than its size alone would suggest.'" (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1105, second italics added.)

"A public entity had actual notice of a dangerous condition . . . if it had

5

actual knowledge of the existence of the condition and knew or should have known of its dangerous character." (§ 835.2, subd. (a).) "A public entity had constructive notice . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b).)

## B. The Moving Papers

We will now summarize the admitted evidence from: 1) the City's motion for summary judgment, 2) Timmons' response, and 3) the City's reply.[2]

### 1. The City's Motion for Summary Judgment

The City argued in the motion for summary judgment there was not a dangerous condition as a matter of law, and the City did not have sufficient notice.

In support, the City filed a separate statement that included the following undisputed facts: Timmons alleges she fell because of a defective area in the street; Timmons walked across the street and alleges she was about to step onto a curb when she stepped on a large dip where the asphalt road meets the concrete gutter; this occurred at about 12:45 p.m., when the weather was sunny and dry; there is no crosswalk where Timmons crossed the street; there was no pedestrian or vehicle traffic that would have blocked Timmons' view of the subject area; Timmons had walked in the area before; a witness had previously noticed the condition of the street, but did not consider it to be dangerous; the subject location was constructed in 1987; between the construction date and the date of the incident (2018) there were no reported falls; no lawsuit had ever been

---

[2] We are not summarizing or considering in our analysis any evidence excluded by the trial court in its evidentiary rulings. Given our disposition on the merits (reversing the trial court's granting of the City's MSJ), it is not necessary for us to consider Timmons' further challenges on appeal to the trial court's evidentiary rulings.

filed against the City alleging a dangerous condition related to the height differential specifically, or the condition of the street generally; and the City's staff averred there had been routine maintenance and inspections of the area since at least May 2014, but the City had never identified the street's condition as dangerous.

### 2. Timmons' Response to the Motion for Summary Judgment

Timmons argued in her response there were triable issues of material fact regarding whether the condition was dangerous.

In support, Timmons' filed a separate statement that included the following undisputed facts: Timmons was 53 years old on the day of the incident; Timmons was walking back to work at the time of the incident; Timmons was wearing sunglasses and Skechers shoes; Timmons was alone; Timmons was crossing the street and was not on her phone or reading anything; Timmons stepped into the area where the asphalt connects with the gutter; Timmons' left ankle twisted and she went down forward on her knees which contacted with the curb; and a witness had noticed a dip in the asphalt.

Timmons disputed the following facts in the City's separate statement: Timmons did not use an available ramp (Timmons maintained it was foreseeable that pedestrians will take a shorter path across the street); the subject condition is the height differential between the asphalt street and the concrete gutter, which is between 1.25 inches and 1.5 inches (Timmons and a witness estimated the height differential to be from one to two inches; and Timmons also maintained the subject condition included 30 to 50 pieces of broken asphalt at the location where she fell).

In her deposition testimony, Timmons testified on the day she fell, "I noticed there's cracks in the asphalt. There's—there's cracks in the gutter. There's . . . little pieces of crumbled black asphalt in that vicinity. That's what I noticed." Timmons was asked, "And when you say the little crumbles, there were actually crumbles that were broken away from the asphalt?" Timmons responded, "That's what it looked like."

7

Timmons estimated there were from 30 to 50 small pieces of broken asphalt.

Timmons was asked, "where were those broken pieces of asphalt in relation to where you fell?" She responded, "Around that whole area." When asked, "were there any of those broken-off pieces of asphalt under where you believed your foot stepped when you twisted your ankle?" Timmons responded, "I think there could have been. I'm not for sure." Timmons was asked, "Were there any of those broken pieces of asphalt in the gutter right where your knees ended up on the curb?" She responded, "Possibly, yeah." When asked, "Do you remember though?" Timmons said, "Yeah, it's - - I can only say that I did see them. I can't really give you really much, you know, specifics on all of that at the time."

Timmons included with the response the declaration of Eris J. Barillas, a forensic analyst. In the admitted portion of Barillas' declaration, she stated, "Industry standards recognize the inherent unsafe nature of unlevel walking surfaces. ASTM [(American Society for Testing and Materials)] F1637-13, a nationally recognized safety standard for the design, construction, and maintenance of reasonably foreseeable pedestrian walkways, states 'Changes in levels greater than ½ in. shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.'"

Barillas averred, "Low lying height differentials often go unnoticed by pedestrians and are likely to pose a significant fall hazard. The physical act of walking is largely an automatic human process wherein it does not require conscious thinking at the forefront of the mind to ambulate. . . . Rather, pedestrians will typically scan the ground area in front of them as they continue to walk forward and observe the other areas of their surrounding environment. As such, the presence of unexpected hazards, such as vertical height differentials, single steps, depressions, holes, etc., are often unperceived, and go unnoticed by pedestrians operating in a reasonably safe manner. . . ."

Quoting from a portion of an engineering book (also admitted into

8

evidence), Barillas stated, "'People do not always monitor the detailed condition of the floor or surface they are walking on. The normal line of sight is about 15° below horizontal relative to the eyes. Most of the time people do not walk around looking down at their feet. As a result, even small changes in surface elevation are not always seen. People have a natural expectation when walking along typical pedestrian walkway areas, such as sidewalks, parking lots, etc., that the walking surfaces will be 'stable, planar, flush, and even to the extent possible . . . .'"

The admitted engineering treatise stated, "Most everyone has caught the toe of their shoe on a protruding or irregular surface of a floor, carpet, or sidewalk. In tripping, the motion of the foot is interrupted during a step. If the interruption of motion is sufficient, a fall will result." The treatise continued: "Not all tripping incidents result in falls, and not all falls lead to serious injury. *Surrounding conditions contribute to the severity of tripping incidents*." (Italics added.)

### 3. The City's Reply to Timmons' Response

The City argued in the reply brief that Timmons did not establish aggravating factors in order to establish a dangerous condition of public property.

The City disputed the following facts in Timmons' statement: Timmons had not previously walked the route she walked (the City maintained she testified she had walked in the area at least twice); Timmons fell because of a large dip in the asphalt (the City maintained the photographs did not reflect a large dip); there were 30 to 50 pieces of broken asphalt on the ground where Timmons fell (the City maintained that photographs taken three weeks later did not reveal any debris at the location and the percipient witness did not see any debris); Timmons estimated the dip to be two inches (the City maintained the height differential was 1.25 to 1.5 inches); and the percipient witness estimated a two-inch dip between the asphalt and the gutter (the City maintained the witness estimated the height differential to be "probably about an inch or two").

9

*C. Application and Analysis*

The elements to establish a dangerous condition of public property are: the property was in a dangerous condition at the time of the injury; the dangerous condition created a reasonably foreseeable risk of the kind of injury alleged; the dangerous condition proximately caused the injury; and either a public employee created the dangerous condition, or the public entity had notice of the dangerous condition for a long enough time to have taken corrective measures. (See § 835.)

In the summary judgment motion, the City's burden was to make a prima facie showing that no triable issues of material fact exist, and it was "entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Reviewing the moving papers de novo, we consider the evidence and "all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).)

Here, we need analyze only whether: 1) there was a dangerous condition of public property at the time of the injury as a matter of law, and 2) whether there was evidence the City had sufficient notice in order to take corrective measures. (See *Canales v. Wells Fargo Bank, N.A.* (2018) 23 Cal.App.5th 1262, 1268 ["a summary judgment motion is directed to the issues framed by the pleadings"].)[3]

*1. Dangerous Condition of Public Property*

The City included photographs within the motion for summary judgment, which were taken some time after the injury. The City contended the photographs demonstrate a height differential of between 1.25 to 1.5 inches between the concrete gutter and the asphalt street. The City argued this height differential constitutes a trivial

___

[3] On appeal, the City argues: "The trial court decided this case solely on the issue of notice, so whether the alleged condition was dangerous is moot." (Boldfacing and capitalization omitted.) The City is mistaken. "The trial court's stated reasons for granting summary judgment are not binding because we review its ruling not its rationale." (*Canales v. Wells Fargo Bank, N.A.*, *supra*, 23 Cal.App.5th at p. 1268.)

(not dangerous) condition as a matter of law. (See, e.g., *Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 753-754 [height differential of "just under three-quarters of an inch" between adjoining sidewalk slabs was a trivial defect as a matter of law].)

However, whether a defect is trivial as a matter of law cannot be decided based solely on only one factor such as the size of the defect. (See *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927, fn. omitted ["The decision whether the defect is dangerous as a matter of law does not rest solely on the size of the crack in the walkway, since a tape measure alone cannot be used to determine whether the defect was trivial"].)

Indeed, Timmons disputed that the height differential was between 1.25 and 1.5 inches at the time of the injury. In deposition testimony, Timmons and the percipient witness both estimated the height differential to be up to two inches. In the trial court, the City argued Timmons had not measured the area; however, in a motion for summary judgment, we must resolve all evidentiary conflicts against the City. (See *McCabe v. American Honda Motor Corp.* (2002) 100 Cal.App.4th 1111, 1119 [in a motion for summary judgment, courts may not make credibility determinations or weigh the evidence, and all evidentiary conflicts are to be resolved against the moving party].)

Additionally, based on the photographs, the asphalt street appears to be broken and jagged around the alleged defect (the uneven area where the street meets the concrete gutter). Timmons also testified there were from 30 to 50 pieces of broken asphalt rubble in the area at the time of her injury. (See *Huckey*, *supra*, 37 Cal.App.5th at p. 1105 ["The court should consider other circumstances which might have rendered the defect a dangerous condition at the time of the accident. [¶] These other circumstances or factors include whether there were any broken pieces or jagged edges in the area of the defect"]; see also *Cerna*, *supra*, 161 Cal.App.4th at pp. 1347-1348 ["A dangerous condition exists when public property 'is physically damaged, deteriorated, or

11

defective in such a way as to foreseeably endanger those using the property itself'"].)[4]

The precise size of the height differential between the asphalt street and the concrete gutter, and the purported presence of pieces of broken asphalt in the area at the time of the accident are disputed material facts. Moreover, we find reasonable jurors might disagree as to whether the City's street posed a substantial risk of an injury to a person exercising due care. (See *Cerna*, *supra*, 161 Cal.App.4th at p. 1347 ["The existence of a dangerous condition is ordinarily a question of fact but 'can be decided as a matter of law if reasonable minds can come to only one conclusion'"].)

In the trial court, relying primarily on case law regarding uneven concrete sidewalk slabs, the City argued the alleged dangerous condition in this case was trivial as a matter of law. We find these published opinions to be distinguishable.

For instance, in *Huckey*, plaintiff alleged he tripped and fell because "[a] concrete panel was 'lifted' in the sidewalk." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1196.) The plaintiff sued defendant city alleging a dangerous condition of public property and negligence. (*Id*. at p. 1098.) The Court of Appeal affirmed the granting of a summary judgment motion. (*Id*. at p. 1101.) The court held a three quarters of an inch height differential between two sidewalk slabs was not a tripping hazard where there was no evidence of any broken pieces or jagged edges in the area where the plaintiff had fallen. (*Id*. at p. 1108.) Further, "the height differential would have been in plain sight." (*Id*. at pp. 1109-1110.) The court reasoned: "To be sure, the height differential posed *some* risk

---

[4] In the trial court, the City argued Timmons "specifically testified that the asphalt pieces did not cause her to fall." This is a mischaracterization of her testimony. When asked, "were there any of those broken-off pieces of asphalt under where you believed your foot stepped when you twisted your ankle?" Timmons responded, "I think there could have been. I'm not for sure." In any event, this argument was irrelevant as it goes the separate element of causation. (See *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 768 ["The status of a condition as 'dangerous' for purposes of the statutory definition does *not* depend on whether the plaintiff or other persons were actually exercising due care but on whether the condition of the property posed a substantial risk of injury to persons who *were* exercising due care"].)

of injury. Construed in the light most favorable to plaintiff, the record supports *a reasonable inference that height differentials higher than one-half inch pose a trip hazard to pedestrians*. But to constitute a dangerous condition, the height differential, *and the area surrounding it*, must have posed 'a substantial (as distinguished from a minor, trivial or insignificant) risk of injury' when "used with due care in a manner in which it is reasonably foreseeable that it will be used.'" (*Id*. at pp. 1110-1111, second italics added, fn. omitted.)

The height differential in *Huckey* was less than one inch; in this case, the height differential was between one and two inches. The height differential in *Huckey* involved the difference in height between two adjoining concrete sidewalk slabs; in this case, the height differential involved the difference in height between an asphalt street and an adjoining concrete gutter. The surrounding area in *Huckey* had no jagged edges or broken pieces; in this case, the surrounding area had jagged edges and broken pieces. In *Huckey*, the height differential was found to be in plain sight; in this this case, the height differential was also arguably in plain sight. But unlike *Huckey*, there were other circumstances present (the jagged and broken asphalt). Further, unlike *Huckey*, the evidence in this case included expert testimony that: "Low lying height differentials often go unnoticed by pedestrians and are likely to pose a significant fall hazard." Also in this case, Timmons apparently tripped and fell as she walked from a higher level street to a lower level gutter, rather than the situation in *Huckey* where the plaintiff apparently tripped and fell while walking from a lower level concrete slab to a higher level concrete slab, with no other unusual circumstances present.

Given the expert evidence about a pedestrian's ordinary line of sight, and the aggravating factors of the broken asphalt and jagged edges, we find reasonable minds may disagree as to whether a misalignment of one to two inches between a concrete gutter and an asphalt street is reasonably within the "plain sight" of a pedestrian who encounters the lower level concrete gutter while walking from a higher level asphalt

13

street in order to reach a sidewalk. (See *Wills v. J.J. Newberry Co.* (1941) 43 Cal.App.2d 595, 601-602 [whether a "dangerous condition was in plain sight" sufficient for a plaintiff to have seen it and avoided it is a question "of fact for the jury"].)

Based on all of the evidence, the surrounding circumstances, and the differences between this case and *Huckey* (and other similar cases involving uneven sidewalk slabs), we cannot say that the City established a trivial or nondangerous condition as a matter of law. (Compare *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 468 [where one sidewalk slab was approximately one inch higher than another, the appellate court held "the defect was not a minor defect as a matter of law and, therefore, the question as to whether it was a dangerous or defective condition . . . was properly submitted to the jury for determination"].)

In short, we find a triable issue of material fact as to whether the condition of the City's street was dangerous.


### 2. Actual or Constructive Notice

We now turn to the second element at issue in this case: whether there was evidence in the record that the City had actual or constructive notice sufficient to "protect against the dangerous condition." (§ 835, subd. (b).) "'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition." (§ 830, subd. (b).)

"The law is settled that a municipality *in the absence of actual knowledge or actual notice* of a dangerous condition existing in its street, is presumed to have constructive notice thereof where such condition has existed for an unreasonable length of time, and that it is *a question of fact* . . . to determine whether the dangerous condition in the public street has existed for a sufficient length of time to constitute constructive notice, and also whether a reasonable time to remedy the condition has existed." (*Rowland v. City of Pomona* (1947) 82 Cal.App.2d 622, 625-626, italics added.)

In a trial regarding an alleged dangerous condition of public property, the jury is instructed as to the element of notice: "[Name of plaintiff] must prove that [name of defendant] had notice of the dangerous condition before the incident occurred. To prove that there was notice, [name of plaintiff] must prove: [¶] [That [name of defendant] *knew of the condition and knew or should have known that it was dangerous.* A public entity knows of a dangerous condition if an employee knows of the condition and reasonably should have informed the entity about it.] [¶] [or] [¶] [That the condition had existed for enough time before the incident and was so obvious that the [name of defendant] reasonably should have discovered the condition and known that it was dangerous.]" (CACI No. 1103, italics added.)

Here, the evidence reasonably shows the City knew about the condition of its street (it had routinely inspected the area for at least four years prior to the accident), but the City did not regard the condition to be dangerous. Indeed, the City stated the "height differential was never identified as a potential trip hazard or flagged for repair." Although there were no prior injuries reported to the City, based on all the admitted evidence (the photographs, the City's employees' declarations, and the expert opinion), we believe reasonable jurors could find the City had actual notice of the dangerous condition. That is, a jury could find that the City "knew of the condition" of its street, and further that the City "knew or should have known that it was dangerous." (See CACI No. 1103; see also 19 McQuillin, Municipal Corporations (3d ed.1999 rev.) § 54:176, p. 336 ["The effect of actual knowledge of an unlawful obstruction in a street, which might occasion injury to persons lawfully in the street, is not lessened because the municipality may not have known that the obstruction was in fact dangerous"].)

Because the statutory element of notice is written in the disjunctive (actual *or* constructive notice), and we have determined that a jury could find the City had actual notice of the condition of its street, it is not necessary for us to consider the issue of constructive notice. (§ 835.2, subds. (a) & (b).) But in any event, the photographs appear

15

to show the height differential and the surrounding conditions did not recently or suddenly appear; rather, the arguably dangerous condition appears to have been present over some substantial period of time. Consequently, we think jurors could also reasonable deduce "the condition had existed for such a period of time and was of such an obvious nature that the public entity [the City], in the exercise of due care, should have discovered the condition and its dangerous character." (See § 835.2, subd. (b).)

Relying on *Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508 (*Martinez*), the City argues notice of a dangerous condition can be adjudicated by a court as a matter of law. While that legal proposition may be true under some circumstances, the circumstances in *Martinez* are not applicable here.

In *Martinez*, plaintiff was walking in an alley and tripped and fell because of a "divot" that was about 1.75 inches deep and had been there for about two years. (*Martinez*, *supra*, 71 Cal.App.5th at p. 515.) The defendant city "had not inspected the alley behind this block" for at least seven years. (*Id*. at p. 515.) The trial court granted the city's motion for summary judgment, in part, because the city argued it had no notice. (*Id*. at pp. 516-517.) At issue on appeal was whether defendant *should have* been on notice: "Such an imperfection may likely have created a triable issue of fact as to whether it was obvious enough to be discovered had it been located on a sidewalk. But does the same analysis apply to an alley? We conclude that the answer is 'no.'" (*Id*. at pp. 513-514.) The Court of Appeal held: "Because alleys, unlike sidewalks, are designed and primarily used for purposes *other than* walking, and because the cost to municipalities of inspecting alleys with the same vigilance as inspecting sidewalks would be astronomical . . . , we hold that what is an obvious defect in the condition of an alley is not the same as for a sidewalk. Because reasonable minds can reach only one conclusion—namely, that the less-than-two-inch deep divot in the asphalt abutting a drainage vein in the alley is not an obvious defect—we affirm the trial court's grant of summary judgment *in this case*." (*Id*. at pp. 513-514, second italics added.)

16

Here, the facts are readily distinguishable.  The alleged defect is located where a street meets a gutter, rather in an alley (or on a sidewalk).  Further, we have concluded there was evidence the City had actual notice, and reasonable minds may differ as to whether the defect was dangerous.  Thus, *Martinez* does not alter our analysis.

In sum, we hold that whether there was a dangerous condition cannot be determined as a matter of law, and whether the City had sufficient notice of the dangerous condition is a disputed issue of material fact.  Therefore, we reverse the ruling of the trial court, which granted the City's motion for summary judgment.[5]


III

DISPOSITION

The trial court's order granting the City's summary judgment motion is reversed in its entirety.  The City is ordered to pay Timmons' costs on appeal.


MOORE, ACTING P. J.

I CONCUR:


SANCHEZ, J.

---

[5] The parties appear to agree that a reversal as to the first cause of action (a dangerous condition of public property) also necessitates a reversal as to the second cause of action (vicarious liability for public entity employees), because both causes of action are based on the same incident and therefore involve the same underlying factual issues.

17

GOETHALS, J., dissenting:

I dissent. Government Code[6] section 835 provides that "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protest against the dangerous condition." (§ 835, subd. (a) & (b).)

In reversing the trial court's grant of the City of Aliso Viejo's (the City) motion for summary judgment, my colleagues conclude "reasonable jurors could find the City had actual notice of the dangerous condition" at the accident scene before plaintiff Amanda Timmons fell. I respectfully disagree.

It appears the following facts are uncontested: (1) Timmons had walked in the area where she fell on prior occasions; (2) the weather on the day of the accident was sunny and dry; (3) the City had received no reports of anyone falling at that location before the date of Timmons's accident; (4) there had been no prior claims made or lawsuits filed related to any prior accident at that location; and (5) there had been no prior reports regarding the existence of any sort of dangerous condition of public property at that location. Moreover, the City offered evidence that, through a private contractor, it had performed regular inspections of its streets and sidewalks for some years prior to the accident. Although the record regarding the nature and extent of those inspections could

---

[6] All statutory references are to this code.

1

have been more robust, it seems they generated no reports of any dangerous condition at the accident scene.

Based on this record, the trial court granted the City's motion for summary judgment after it determined Timmons had failed to satisfy the Government Code's notice requirement. After analyzing the issue de novo, as we must, I reach the same conclusion.

"A public entity had actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." (§ 835.2, subd. (a).) Even if Timmons raised a triable issue of material fact as to the presence of a dangerous condition at the scene of her accident, I believe she failed as a matter of law to raise such an issue with respect to notice. I would therefore affirm the trial court's ruling.


GOETHALS, J.

2